**Lindahl KING et al., Appellees,**

**v.**

**SADDLEBACK JUNIOR COLLEGE DISTRICT et al., Appellants.**

**No. 25464.**

United States Court of Appeals,
Ninth Circuit.

April 16, 1970.

Adrian Kuyper, Orange County Counsel, John F. Powell, Deputy County Counsel, Santa Ana, Cal., for appellants.

A. L. Wirin, Fred Okrand, Los Angeles, Cal., Patricia Herzog, Corona Del Mar, Cal., for appellees.

Before HAMLEY, WRIGHT and TRASK, Circuit Judges.

TRASK, Circuit Judge:

This is an appeal by Saddleback Junior College District from a grant of two preliminary injunctions sought by Lindahl King and two other students at the Junior College.

Lindahl King alleged in a complaint filed in the United States District Court that he was refused registration at Saddleback Junior College, a public corporation, unless and until he conformed his hair style to the requirements of the established dress code of the school. The regulation in question proscribes:

"Hair which falls below the eyebrows, or covers all or part of the ear, or hangs entirely over the collar of a dress shirt."

He sought a declaratory judgment invalidating the regulation and an injunction enjoining the Junior College District, its Superintendent, and the president of the college from enforcing the regulation. He also prayed for a preliminary injunction restraining enforcement of the dress regulation pending final hearing. Jurisdiction was asserted under 42 U.S. C. § 1983 and 28 U.S.C. § 1343.

The matter came on for hearing on December 29, 1969, on affidavits and memoranda of law. On January 6, 1970, the District Court issued its preliminary injunction enjoining the defendants from refusing to register King in the college and from refusing to allow him to attend classes on the ground that his hair style was not acceptable under the applicable dress code.

Subsequently, two other students were added as plaintiffs, and on January 19, 1970, a hearing was held on their similar complaints. Upon a substantially like record the District Court, on February 5, 1970, issued the preliminary injunction in identical form against the defendants and in favor of the new plaintiffs, Mark Carlson and Michael Martin.

■■ It is the function of a preliminary injunction to preserve the status quo pending a determination of the action on the merits. Washington Capi-tols Basketball Club, Inc. v. Barry, 419 F.2d 472, 476 (9th Cir. 1969). Here the students were seeking to register for a forthcoming term. They had not yet begun the current term at the college. The preliminary injunction went beyond the preservation of the then existing status quo and decreed that the applicants should be permitted to register in violation of the regulation and prior to a determination of its validity. On this the court abused its discretion. Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F. 2d 804, 808–809 (9th Cir. 1963), cert. denied, 375 U.S. 821, 84 S.Ct. 59, 11 L. Ed.2d 55 (1963).

■ Factors to be taken into consideration in weighing an application for a preliminary injunction are the relative importance of the rights asserted, the acts to be enjoined, the hardship that would result during the pendency of the action from granting or refusing to grant a preliminary injunction, the probability of ultimate success, and the public interest. Unicon Management Corp. v. Koppers Co., 366 F.2d 199, 204–205 (2d Cir. 1966).

In considering the acts to be enjoined, it is immediately apparent that the court is presuming to interfere with the day-to-day operation of the public school system. The record here discloses that Section 1052 of the California Education Code provides that the governing board of a school district is given the authority to prescribe rules for the government and discipline of schools under its jurisdiction. Public junior colleges are secondary schools and a part of the public school system of the state. (§ 22650, California Education Code.)

The Supreme Court has stated that, where school authorities are shown to have formally acted, the courts should interfere only with great caution.

"Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. Our courts, however, had not failed to apply the First Amendment's mandate in our educa-

tional system where essential to safeguard the fundamental values of freedom of speech and inquiry and of belief. By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

"[T]he Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 507, 89 S. Ct. 733, 21 L.Ed.2d 731 (1969).

Although the rights being here asserted cannot be minimized, the pleadings and District Court opinion do not indicate that plantiffs have claimed a depri-

vation of rights under the First Amendment. As we view it, under the circumstances of this case, plaintiffs at most invoke the peripheral or penumbral right either of privacy or to be let alone. See Griswold v. Connecticut, 381 U.S. 479, 484–485, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Since the factual existence of this right itself is in doubt at this point in the proceeding, we do not think plaintiffs' case is entitled to the *per se* status guaranteed by the Constitution[1] Only where under the facts of a particular case the courts have said, following a full determination on the merits, privacy of an individual or his right to be let alone have been impaired without adequate reason, does a claimed interference of this kind assume constitutional proportions. Those asserting the existence of the right under the particular circumstances and an impairment thereof or a threat of impairment have the burden of proving it.

As to the probability of ultimate success upon the merits of the complaint, from the present state of the record it is not clear whether plaintiffs will, at trial, be able to carry their burden[2]. As to

---

1. Plaintiffs' case would be entitled to *per se* status if it alleged specific guarantees in The Bill of Rights or those guarantees that are "so rooted in the traditions and conscience of our people as to be ranked as fundamental." Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934); Griswold v. Connecticut, 381 U.S. 479, 487–488, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Mr. Justice Goldberg, concurring). *Cf.* Witherspoon v. Illinois, 391 U.S. 510, 518, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

2. As this is an appeal from the grant of a preliminary injunction, our consideration of the merits is confined to an inquiry as to whether there is a reasonable probability that plaintiffs will prevail on the merits. Nothing we now say is intended to restrict the District Court in making the initial determination on the merits, after a trial. *See* Ross Whitney Corp. v. Smith Kline & French Labs., 207 F.2d 190, 199 (9th Cir. 1953).

It is nevertheless appropriate to note that the authorities on the legal questions involved are is disarray. Two circuits

have considered the problem with differing results. Ferrell v. Dallas Independent School Dist., 392 F.2d 697 (5th Cir. 1968), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968); Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969).

The number of District Court cases dealing with the problem is becoming epidemic. *See, e. g.,* Davis v. Firment, 269 F.Supp. 524 (E.D.La.1967); Zachry v. Brown, 299 F.Supp. 1360 (N.D.Ala. 1969); Griffin v. Tatum, 300 F.Supp. 60 (M.D.Ala.1969); Crews v. Clones, 303 F.Supp. 1370 (D.Ind.1969); Richards v. Thurston, 304 F.Supp. 449 (D.Mass. 1969); Olff v. East Side Union High School Dist., 305 F.Supp. 557 (N.D.Cal. 1969); Westley v. Rossi, 305 F.Supp. 706 (D.Minn.1969); Brick v. Board, 305 F. Supp. 1316 (D.Colo.1969); Sims v. Colfax Community School Dist., 307 F.Supp. 485 (S.D.Iowa 1969); Neuhaus v. Torrey, 310 F.Supp. 192 (N.D.Cal.1970).

The United States Supreme Court has not directly considered the problem. In *Tinker, supra,* the Court found that the wearing of armbands for the purpose of expressing ideas was akin to speech and

the hardship resulting from granting or denying the preliminary injunction, it is difficult to find that plaintiffs have been or will be irreparably injured pending hearing in the District Court. They are not in fact prevented from either registering or attending classes by the regulation in question. According to affidavits on file, they are not required to cut their hair. They may comply with the regulation as long as they avoid "hair which falls below the eyebrows, or covers all or part of the ear, or hangs entirely over the collar of a dress shirt." This presumably may be accomplished by such means as hair styling or wearing of head bands. The dress code provision under examination does not require a rigid and particular standard of sameness. It establishes a maximum only, within which much latitude is given for individual expression of personality by males interested in their coiffures.

An appeal from an order of the district court granting or denying a preliminary injunction presents only the narrow question of whether or not the grant of the order is an abuse of discretion. Washington Capitols Basketball Club, Inc. v. Barry, *supra*. Where preservation of the status quo favors denial of the injunctions, where the probability of ultimate success is in doubt, where the appellants have not shown any real hardship resulting from denial, and where the record at this time is based on affidavits which are confusing and contradictory, we do not believe the two preliminary injunctions should have been granted.

The preliminary injunctions are vacated and the cause remanded to the district court for further proceedings.

entitled to First Amendment protection. The Court, however, carefully noted that the problem posed therein did "not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment." 393 U.S. at 507–508, 89 S.Ct. at 737.

Analogous cases have turned on whether a violation of the school regulation in

question caused or threatened to cause disturbance and disruption of the academic process. *Compare* Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966), *with* Blackwell v. Issaquena County Bd. of Ed., 363 F.2d 749 (5th Cir. 1966).