Patrick J. GERMON, Plaintiff-Appellant,

v.

The TIMES MIRROR COMPANY, a corporation, Defendant-Appellee.

No. 74–1967.

United States Court of Appeals, Ninth Circuit.

Aug. 4, 1975.

Timothy H. Fine, G. Joseph Bertain, Jr., and W. Thomas Amen, San Francisco, Cal., James J. Coyle (argued), Thomas R. Sheridan, Simon & Sheridan; Wallace L. Rosvall, Murphy, Thornton, Hinerfeld & Cahill, Los Angeles, Cal., for plaintiff-appellant.

Donald L. Zachary, John J. Hanson (argued), Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendant-appellee.

OPINION

Before WRIGHT and GOODWIN, Circuit Judges, and WOLLENBERG,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

This is an appeal from an order denying appellant's motion for a preliminary injunction to restrain termination of his newspaper distributorship. We affirm.

Appellant was a home delivery dealer for the *Los Angeles Times* from 1964 until his termination in May, 1974. "Home delivery dealers" are responsible for distribution and sales of the Times to home subscribers in designated areas, while "street sale dealers" service retail accounts and vending machine purchasers.[1]

Appellant also was one of 19 persons who, on April 30, 1973, filed an antitrust

---

* Senior District Judge, of the Northern District of California.

1. A more detailed description of a similar newspaper distribution system can be found in this court's recent opinion in *Blankenship v. Hearst Corp.*, 519 F.2d 418 at 421 (9th Cir. 1975).

action against Times Mirror, which publishes the Times. That action is pending in district court. *McKinsey v. The Times Mirror Co.*, No. 73–946–EC (C.D.Cal. 1973).[2]

Appellant was notified on April 24, 1974 of his impending termination, pursuant to a provision in Germon's Home Delivery Dealer Agreement allowing Times Mirror to terminate on 30 days written notice.[3]

The letter of termination states that the action had been taken because of Germon's role in an April 14, 1974 altercation with a long-time customer of the company and his son. The incident had occurred while Germon was attempting to set up a newspaper rack outside a liquor store owned by Clyde Fitzgerald, who sold the *Times* over the counter.

Germon's rack had been removed from this location several times before his confrontation with the store owner. When the Fitzgeralds approached Germon to protest his attempt to replace the rack, a fight ensued. In it, the elder Fitzgerald either fell or was thrown through a plate glass window, and his son landed against the window.[4] The Fitzgeralds suffered severe cuts and later named Times Mirror along with Germon in a lawsuit arising from the incident.

The termination letter stated that Germon's behavior had been "completely inappropriate under the circumstances." Regardless of who instigated the fight, it concluded, Germon had "exercise[d] extremely poor business judgment," inviting both customer unhappiness and legal action against the *Times* and reflecting adversely on the paper's goodwill and reputation.

2. Although it has been stayed pending determination of a similar suit against Times Mirror by several of the same parties, it has survived (at least in substantial part) defense motions for dismissal and for summary judgment.

3. In pertinent part, Germon's Home Delivery Dealer Agreement provides:

"The Company at its option may terminate this agreement at any time by serving upon the Dealer a written notice of its intention so to do not less than thirty (30) days or more than forty-five (45) days prior to the date on which said termination is to become effective according to the terms of such notice."

Appellant contends that the real reason for his termination was not that stated by the *Times*, but rather was retaliation for his initiation of an antitrust action against the paper and for his efforts to expand his operations beyond the territory and class of customers assigned to him. He asked that the court preliminarily enjoin the termination, and also enjoin the *Times* from selling him papers in inadequate amounts or at discriminatory prices, or in any other way engaging in conduct designed to place him at a competitive disadvantage.

The court found that the *Times* had thoroughly investigated the incident, and that its officers' decision to terminate Germon was reasonable, based on the facts, and not made because Germon's efforts to expand his operations and challenge Times Mirror's allegedly anticompetitive practices. The court denied interlocutory relief, concluding that:

"1. Germon was terminated because of the Tiffany's belief that his conduct during his alteraction [sic] with the Fitzgeralds was totally inappropriate for a dealer for The Times; he was not terminated for any anti-competitive reason.

2. Germon has failed to sustain his burden of proving that he had a likelihood of success in proving that his termination was in furtherance of anticompetitive scheme.

3. Any injuries which Germon has sustained because of his termination as a home delivery dealer can be compensated by money damages.

4. Germon has failed to sustain his burden of proving irreparable injury." [5]

4. While the evidence was somewhat unclear as to who struck the first blow and whether the Fitzgeralds fell or were pushed into the window, the district court concluded that the Times Mirror officer who investigated the incident had grounds for believing and did believe that the Fitzgeralds were pushed.

5. Since the court found no cause to enjoin the impending termination, it did not need to consider the additional injunctive relief related to the terms of the dealership arrangement.

■ As the district court correctly noted, the party seeking a preliminary injunction must show both a likelihood of success on the merits and irreparable harm if its motion is denied. *Sierra Club v. Hickel,* 433 F.2d 24, 33 (9th Cir. 1970); *see also King v. Saddleback Jr. Coll. Dist.,* 425 F.2d 426 (9th Cir. 1970).

■ Appellant argues that the district court could not properly conclude that he had failed to show the requisite likelihood of success. A dealer who has filed an antitrust action against his supplier should be immune from termination, he contends, subject only to such equitable defense as unclean hands.

We find no support for appellant's claim to a special immunity from termination. The purposes of the antitrust laws deal with promoting competition, not with extending unsatisfactory contractual relationships beyond their stipulated periods of effectiveness.

Appellee concedes that if the decision to terminate Germon had been made for a reason other than that found by the district court, a different question might arise. A termination might be enjoinable even if done pursuant to contract, if the contractual clause relied upon were being used to foster an unlawful anti-competitive scheme. *See Milsen Co. v. Southland Corp.,* 454 F.2d 363, 368–69 (7th Cir. 1971), and cases cited therein; *cf. Otter Tail Power Co. v. United States,* 410 U.S. 366, 378–79, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973).

However, in this case the court found "no evidence" to support appellant's claim that the termination was retaliatory, and little likelihood that he would be able to show that the action was not taken for the reasons stated by the company. While appellant points to his record of ten years and admittedly satisfactory service, he presented no evidence from which the district court might have concluded that the *Times* would have treated other dealers less severely in a similar situation.

■ A party seeking preliminary relief must show a likelihood of success on the merits *and* that he will suffer irreparable injury if the relief is denied. *Larry P. v. Riles,* 502 F.2d 963, 964 (9th Cir. 1974). Because Germon failed to sustain his burden of showing a likelihood of success on the merits, we need not consider the issue of irreparable injury since Germon would not be entitled to the relief sought even if he were to prevail on this issue. Accordingly, the order denying preliminary injunctive relief is affirmed.