**TERMINAL–HUDSON ELECTRONICS, INC. OF CALIFORNIA, dba Opti-Cal, Plaintiff,**

v.

**DEPARTMENT OF CONSUMER AFFAIRS et al., Defendants.**

**CALIFORNIA CITIZEN ACTION GROUP et al., Plaintiffs,**

v.

**DEPARTMENT OF CONSUMER AFFAIRS et al., Defendants.**

**Nos. CV 74–2321 (AAH) FW, CV 74–2079 ALS.**

United States District Court, C. D. California.

Jan. 6, 1976.

Charles W. Anshen, Beverly Hills, for plaintiffs; Lee Zorne, Beverly Hills, Cal. (of counsel).

Evelle J. Younger, Atty. Gen., Alvin J. Korobkin, Deputy Atty. Gen., San Diego, Cal., for defendants.

Athearn, Chandler & Hoffman, Walter Hoffman, Donald H. Maffly, San Francisco, Cal., for amicus curiae California Assn. of Dispensing Opticians.

James S. Reed, Consumer Federation of California, Sacramento, Cal., for amicus curiae Consumer Federation of California.

Wilke, Fleury, Sapunor & Hoffelt, William A. Gould, Jr., Sacramento, Cal., for amicus curiae California Optometric Assn.

## DECISION

Before ELY, Circuit Judge, EAST, Senior District Judge, and WHELAN, District Judge.[*]

EAST, Senior District Judge:

The above two cases were consolidated as a matter of judicial expediency for hearing upon the several motions of the respective parties as hereinafter delineated.

---

[*] The above Case No. 74–2321 was upon the filing thereof assigned to the calendar of the Honorable A. Andrew Hauk, District Judge for this District, and thereafter transferred pursuant to the local rules of the District to the calendar of the Honorable Francis C. Whelan, District Judge above. Upon the written certificate of Judge Whelan, the Honorable Richard H. Chambers, Chief Judge for the Ninth Circuit, by written designation dated September 3, 1974, designated the Honorable Walter Ely, Circuit Judge for the Ninth Circuit, Senior District Judge William G. East for the District of Oregon, and the Honorable Francis C. Whelan, District Judge aforesaid, as constituting the above statutory three-judge District Court to hear Case No. 74–2321.

The above Case No. 74–2079 was upon the filing thereof assigned to the calendar of the Honorable Albert Lee Stephens, Jr., Chief Judge of this District. Upon the written certificate of Chief Judge Stephens dated November 5, 1974, and with the consent of all judges concerned, Chief Judge Chambers, by written designation dated on or about December 13, 1974, designated the above-named membership as constituting the statutory three-judge District Court to also hear the related Case No. 74–2321.

Chief Judge Chambers' designation last mentioned above and dated on or about December 13, 1974, provided, inter alia:

"Judge Whelan is designated as a member of the court for economy in judicial effort.

"Any party objecting to the membership of the court shall file an objection in the district court within 14 days from the date of the filing of this order in the district court."

No objection to that designation was at any time filed. Cf. Hicks v. Miranda, 422 U.S. 332, at 338, n. 5, 352, 95 S.Ct. 2281 at 2286, n. 5, 2293, 45 L.Ed.2d 223 (1975) (Burger, C. J., concurring).

CASE NO. CV 74–2079 ALS

*Plaintiffs' Cause:*

It appears from the verified complaint:

The plaintiff California Citizen Action Group (hereinafter referred to as CCAG) is a non-profit, non-partisan, volunteer organization incorporated in California, with a membership of approximately 800, many of whom are wearers of prescription eyeglasses;

The plaintiffs Dick Davis, Pedro Gonzales, Nathan Seiderman and Ernest A. Jacobi (hereinafter referred to as the Named Plaintiffs) are residents of the State of California and suffer certain optical infirmities which require that they wear prescriptive eyeglasses; and

The defendants are the Department of Consumer Affairs, State Board of Optometry, and State Board of Medical Examiners, each statutory agencies of the State of California, and the respective individuals constituting the membership of the agencies (hereinafter collectively and severally referred to as Defendants).

The Business and Professions Code of the State of California provides in relevant part:

Section 651.3: "No person, whether or not licensed under this division, shall advertise or cause or permit to be advertised, any representations in any form which in any manner, whether directly or indirectly, refer to the cost, price, charge, or fee to be paid for any commodity or commodities furnished or any service or services performed by any person licensed as a . . . optometrist . . . registered dispensing optician, when those commodities or services are furnished in connection with the . . . business for which he is licensed . . . ."

Section 2556: "It is unlawful to do any of the following: To advertise at a stipulated price or any variation of such a price or as being free, the furnishing of a lens, lenses, glasses or the frames and fittings thereof . . ."

Section 3129: "It is unlawful to advertise at a stipulated price . . .

any of the following: . . . the furnishing of a lens, lenses, glasses, or the frames or fittings thereof. . . . "

Title 16 of the Professional and Vocational Regulations of the State of California provides in relevant part:

Section 1515(b): "No advertising of any optometrical service may state any stipulated amount of money or no money as a 'down payment' or any 'no charge for credit' or any stipulated amount of money as a periodical payment or at the termination of any period of time."

Provision is also made for possible criminal penalty for the violation of each of the sections.

It further appears from the verified complaint and the records herein that as a result of the proscriptions in the sections, there is in California no publication, advertising or promotion of the prices of prescription eyeglasses, and CCAG and the Named Plaintiffs are thereby deprived of true factual information concerning comparative pricing and where prescription eyeglasses might be purchased at such pricing.

CCAG and the Named Plaintiffs seek ultimate permanent relief by way of this court's declaration that the provisions of Sections 651.3, 2556 and 3129 of the Business and Professions Code of the State of California and Title 16, Section 1515(b), of the Professional and Vocational Regulations of the State of California, and each of them, to the extent that such provisions deprive them of news media public offerings of true factual information as to comparative costs and prices and where to purchase eyeglasses and kindred services at such costs and prices, are violative of their United States Constitution, First Amendment, immunities and privileges, and, if necessary, permanent injunctive enforcement of the declaration.

Presently CCAG and the Named Plaintiffs seek temporary injunctive relief from the Defendants' enforcement of those provisions of the Sections asserted to the extent that such enforcement

would deprive them of news media public offerings of true factual information concerning eyeglasses and kindred services as above delineated.

*Motions:*

We deny the Defendants' motion to dismiss the complaint and cause.

We reject the suggestion to abstain and defer to the State of California courts a state law interpretation of the sections involved. *See Procunier v. Martinez,* 416 U.S. 396, 404, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); and *Zwickler v. Koota,* 389 U.S. 241, 252–55, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

The standing of CCAG as a proper party plaintiff is not established by undisputed evidence, and we reserve for a future determination, if required, the lawful standing of CCAG as a proper party plaintiff in these proceedings. *Cf. Construction Industry Association of Sonoma County v. Petaluma,* 522 F.2d 897, at 902–904 (9th Cir. 1975).

We grant the motion of the Named Plaintiffs for preliminary injunctive relief as sought.

*Discussion:*

The Defendants contend that news media paid informational advertisements of price structures for commodities and services at public offerings are "commercial" or "business" speech which enjoy no First Amendment protection under the rationale and rule of *Valentine v. Chrestensen,* 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942) [hereinafter cited as *Chrestensen*]. The rationale of *Chrestensen* has been criticized for nearly 20 years. Concurring in *Cammarano v. United States,* 358 U.S. 498, 79 S.Ct. 524, 3 L.Ed.2d 462 (1958), Mr. Justice Douglas wrote:

"*Chrestensen* . . . held that business advertisements and commercial matters did not enjoy the protection of the First Amendment . . . was casual, almost offhand. And it has not survived reflection. . . . Individual or group protests against action which results in monetary injuries are certainly not beyond the reach of the First Amendment . . . ." 358 U.S. at 513–14, 79 S.Ct. at 533–534.

Informative is Mr. Justice Brennan's dissent in *Lehman v. City of Shaker Heights,* 418 U.S. 298, 314, n. 6, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974).

Lately, the *Chrestensen* rationale was sent to oblivion in *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (U.S. June 16, 1975).[1] Therein the majority at 818, 95 S.Ct. at 2231 say of the *Chrestensen* rationale of non-First Amendment protection "to paid commercial advertisements" that:

"Our cases, however, clearly establish that speech is not stripped of First Amendment protection merely because it appears in that form. *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relation,* 413 U.S. 376, 384 [93 S.Ct. 2553, 2558, 37 L.Ed.2d 669] (1973); *New York Times Co. v. Sullivan,* 376 U.S. 254, 266 [84 S.Ct. 710, 718, 11 L.Ed.2d 686] (1964).

"The fact that the particular advertisement in appellant's newspaper had commercial aspects or reflected the advertiser's commercial interests did not negate all First Amendment guarantees. The State was not free of constitutional restraint merely because the advertisement involved sales or 'solicitations,' *Murdock v. Pennsylvania,* 319 U.S. 105, 110–111 [63 S. Ct. 870, 873–874, 87 L.Ed. 1292] (1943) . . . or because appellant's motive or the motive of the advertiser may have involved financial gain, *Thomas v. Collins,* 323 U.S. 516,

---

1. True enough, *Bigelow, supra* involved commercial advertising of an abortion referral service, while the issue before us is commercial advertising of eyeglasses. Both involve commercial advertising and we see no significant distinction between the two.

531 [65 S.Ct. 315, 323, 89 L.Ed. 430] (1945). The existence of 'commercial activity, in itself, is not justification for narrowing the protection of expression secured by the First Amendment.' *Ginzburg v. United States*, 383 U.S. 463, 474 [86 S.Ct. 942, 949, 16 L.Ed.2d 31] (1966).

. . . . .

"The fact that [*Chrestensen*] had the effect of banning a particular handbill does not mean that *Chrestensen* is authority for the proposition that all statutes regulating commercial advertising are immune from constitutional challenge. The case obviously does not support any sweeping proposition that advertising is unprotected *per se.*"

Finally, the majority completely sweeps away and eradicates the *Chrestensen* rationale via the statement at 826, 95 S.Ct. at 2235:

"The relationship of speech to the marketplace of products or of services does not make it valueless in the marketplace of ideas.

"The Court has stated that 'a State cannot foreclose the exercise of constitutional rights by mere labels.' *NAACP v. Button*, 371 U.S. [415] at 429 [83 S.Ct. [328] at 336, 9 L.Ed.2d 405]. Regardless of the particular label asserted by the State—whether it calls speech 'commercial' or 'commercial advertising' or 'solicitation'—a court may not escape the task of assessing the First Amendment interest at stake and weighing it against the public interest allegedly served by the regulation."

*See Anderson, Clayton & Co. v. Washington State Department of Agriculture*, 402 F.Supp. 1253 (W.D.Wash.1975). *See also Population Services International v. Wilson*, 398 F.Supp. 321 (S.D.N.Y.1975), appeal docketed sub. nom. *Carey v. Population Services International*, 44 U.S. L.W. 3162 (U.S. Sept. 30, 1975) (No. 75–443).

The Named Plaintiffs do not contend that they as a consenting audience are seeking to enforce a prospective advertiser's right to exercise his freedom of commercial speech but rather a correlative right to receive such informational advertisements. We are satisfied that the United States Supreme Court's case law recognition of an implied personal constitutional privilege and immunity to receive and have the fruit of free speech and press lawfully exercised under the First Amendment has now made the full circle.

Justice Brennan in his concurring opinion in *Lamont v. Postmaster General*, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965), wrote at 308, 85 S.Ct. at 1497:

"It is true that the First Amendment contains no specific guarantee of access to publications. However, the protection of the Bill of Rights goes beyond the specific guarantees to protect from congressional abridgment those equally fundamental personal rights necessary to make the express guarantees fully meaningful. [Citing cases] I think the right to receive publications is such a fundamental right. The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them. It would be a barren marketplace of ideas that had only sellers and no buyers."

■ We conclude that the Named Plaintiffs' individual right to receive and have truthful information of comparative prices and where to buy corrective eyeglasses for the furtherance of his health and welfare is protected by the First Amendment as " '[i]t is now well established that the Constitution protects the right to receive information and ideas. "This freedom (of speech and press) . . . necessarily protects the right to receive . . . .'" *Martin v. City of Struthers*, 319 U.S. 141, 143 [63 S.Ct. 862, 863, 87 L.Ed. 1313] (1943) . . . .' *Stanley v. Georgia*, 394 U.S. 557, 564 [89 S.Ct. 1243, 1247] (1969)." *Kleindienst v. Mandel*, 408 U.S. 753, 762–63, 92 S.Ct. 2576, 2581, 33 L.Ed.2d 683

(1971).[2] *Terry v. California State Board of Pharmacy*, 395 F.Supp. 94 (N.D.Cal. 1975); and *Virginia Citizens Consumer Council, Inc. v. State Board of Pharmacy*, 373 F.Supp. 683 (E.D.Va.1974), *prob. juris. noted*, 420 U.S. 971, 95 S.Ct. 1389, 43 L.Ed.2d 650 (1975) (No. 74–895).

The Defendants rely upon the rationale of a valid and necessary police power protection of the health and welfare of a state's residents as expressed in *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955), and *Head v. New Mexico Board of Examiners in Optometry*, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963), to support the constitutionality of the challenged sections. That reliance is poorly placed. The statutory provisions under attack in those two cases were regulatory licensing measures placed on the artisans engaged in the prescribing, making, and dispensing of eyeglasses and forbidding any type of, *inter alia*, advertisement solicitation of business. Those challenges were based upon claims of a lack of due process and unequal treatment under the Fourteenth Amendment. Restrictions upon the freedom to speak and the correlative freedom to hear what is to be said under the First Amendment were not involved. *See Terry, supra* at 107–08.

■ Next, the Defendants recall to us that the challenged sections were enacted in 1973, 1939, and 1961, respectively, and have remained in effect ever since with obvious legislative approval. Therefore, they claim that the granting of preliminary relief to the Named Plaintiffs would run counter to and upset the "status quo" rather than maintain the same as required by *Washington Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472 (9th Cir. 1969), and *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808–09 (9th Cir.), *cert. denied*, 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed.2d 55 (1963).

Non-legislative corrective action is admitted; nevertheless it does not necessarily follow that the *status quo ante litem* of the judicial recognition and protection of the Named Plaintiffs' fundamental rights under the Privilege and Immunities Clause of the First Amendment have remained in the *status quo* since the enactment date of the sections until the present day. Witness the slow erosion and ultimate death knell of the *Chrestensen* rationale of non-First Amendment protection of commercial speech dealt by *Bigelow, supra* and forecast in *Terry, supra*.

Thus we conclude that the status quo of the Named Plaintiffs' present day privileges and immunities under the First Amendment is threatened by the continued enforcement of the challenged provisions of the sections pending final determination of these proceedings upon the merits.

The Defendants further insist that each of the factors that must be considered in weighing the application for a preliminary injunction as required by *King v. Saddleback Junior College District*, 425 F.2d 426, 427 (9th Cir. 1970), weigh heavily against a grant of temporary relief herein. We believe to the contrary. Based upon *Terry, supra*, per District Judge Peckham, and *Virginia Citizens Consumer Council, supra*, we conclude that:

1. The Named Plaintiffs' First Amendment privileges and immunities are of primary and fundamental importance and they suffer and sustain day by day irrevocable injury as a matter of law through state law infringement and deprivation of those privileges and immunities; yet the issuance of temporary relief from the enforcement of the offending provisions of the challenged sections will not result in any recognizable hardship to the legitimate interests and purposes of the State of California which can be adequately served by immediate legislative enactment of less drastic means of

---

**2.** For an updated review of the development of the right to receive, *see* 63 Geo.L.J. 775, 777, *et seq.* (1975).

lawful police power health and welfare regulation of the artisans engaged in the making and dispensing of prescription eyeglasses. Such is the mandate of the United States Supreme Court in *Kusper v. Pontikes*, 414 U.S. 51, at 58–59, 94 S.Ct. 303, at 308, 38 L.Ed.2d 260 (1973):

> "For even when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty. *Dunn v. Blumstein*, 405 U.S. 330, at 343 [92 S.Ct. 995, 31 L.Ed.2d 274]. 'Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms.' *NAACP v. Button*, 371 U.S., at 438 [83 S.Ct. 328.] If the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties. *Shelton v. Tucker*, 364 U.S. 479, 488 [81 S.Ct. 247, 252, 5 L.Ed.2d 231]."

2. The public interest in the lawful dissemination of and the correlative interest in receiving true factual information concerning costs and prices and where to acquire corrective eyeglasses are equated, we believe, evenly with the highly measured public interest in the ultimate acquisition of pure foods,[3] prescription drugs,[4] abortions,[5] and contraceptives;[6] and

3. There is a great probability that at least the Named Plaintiffs will ultimately succeed in obtaining in these proceedings the ultimate declaratory judgment sought, and, if necessary, permanent injunctive enforcement thereof. *Terry, supra,* and *Virginia Citizens Consumer Council, supra.*

Finally, we conclude that the Named Plaintiffs are entitled to temporary injunctive relief enjoining the Defendants and all persons claiming by and through them from enforcing any of the provisions of the said sections inconsistent with the Named Plaintiffs' several First Amendment privileges and immunities as above delineated during the pendency of these proceedings or until further order of the court.

We deem that security in the sum of $50 is sufficient security as required by Fed.R.Civ.P. 65(c).

The foregoing Decision constitutes this court's findings of fact and conclusions of law as provided by Fed.R.Civ.P. 52(a).

Counsel for the Named Plaintiffs is requested to prepare, serve opposing counsel, and present to this court within 15 days from the date hereof an appropriate order or orders based upon the findings of fact and conclusions of law above delineated for temporary injunctive relief consistent with the foregoing.

## CASE NO. CV 74–2321 (AAH) FW

■ This cause was instituted by the plaintiff Terminal-Hudson Electronics, Inc. of California, dba Opti-Cal, (hereinafter referred to as Opti-Cal) some three months after the institution of Case No. 2079 above. The defendants in the two proceedings are substantially common to each. Opti-Cal seeks identical temporary and permanent relief from state law infringement of First Amendment privileges and immunities.

Thereafter the Defendants, via the Board of Medical Examiners, State of California, and the Board of Optometry, State of California, as plaintiffs in the cause numbered C 98058 then pending in the Superior Court of the State of California, County of Los Angeles, obtained a preliminary injunction enjoining Opti-Cal during the pendency of the cause "from performing anywhere in the State of California, directly or indirectly," any or all of the acts of advertising as proscribed by the challenged sections.

Following the hearing of all counsel herein on April 25 last upon Opti-Cal's

---

3. *Anderson, Clayton & Co., supra.*

4. *Terry, supra,* and *Virginia Citizens Consumer Council, supra.*

5. *Bigelow, supra.*

6. *Population Services, supra.*

companion Fed.R.Civ.P. 65 motion for temporary injunctive relief, and the Defendants' motion to dismiss, it appeared that the State Court's preliminary injunction was still in force and effect and in a continuing status. Nevertheless we indicated that the motion to dismiss should be denied and the plaintiffs' motion for temporary injunction was submitted.

Subsequent decisions of the Supreme Court of the United States in *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), and *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), cause us to *sua sponte* reconsider the Defendants' motion to dismiss.

For the reasons expressed above in Case No. 2079, we are convinced that Opti-Cal should be entitled to temporary and ultimate permanent relief correlative to that accruing to the Named Plaintiffs from the flagrant anti-competition inducing state law infringement of Opti-Cal's First Amendment privileges and immunities.

However, we are mandated to conclude that the complaint and cause of Opti-Cal must be dismissed in deference to the pending State proceedings as the appropriate forum for the presentation of Opti-Cal's First Amendment claims. *Hicks, supra,* and *Doran, supra.* We realize that the state proceeding against Opti-Cal is civil and injunctive in nature, but it is based on statutes providing possible criminal penalty. Consequently, those proceedings are "akin to a criminal proceeding." *See Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *cf. Hicks, supra,* 422 U.S. at 351 n. 20, 357, 95 S.Ct. 2293 n. 20, 2296 (Stewart, J., dissenting).

Counsel for the Defendants is requested to prepare, serve opposing counsel, and present to this court within 15 days from the date hereof an appropriate order or orders for the dismissal of Case No. 74–2321 in accordance with the above.

WHELAN, District Judge (concurring in part and dissenting in part).

I concur in the decision of the majority that Action No. CV 74–2321 must be dismissed in deference to the pending State proceeding against Terminal Hudson Electronics, Inc. of California dba Opti-Cal.

However, I respectfully dissent from the holding of the majority in Action No. 74–2079. It would appear clear that under the rulings of the United States Supreme Court that the named Plaintiffs in the latter numbered action are not entitled to a preliminary injunction. The latest expression of the Supreme Court in *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600, speaking through Mr. Justice Blackmun, in fact states in footnote 10 on page 825, on page 2234 of 95 S.Ct. of the opinion:

"Our decision also is in no way inconsistent with our holdings in the Fourteenth Amendment cases that concern the regulation of professional activity. See *North Dakota Pharmacy Bd. v. Snyder's Stores,* 414 U.S. 156 [94 S.Ct. 407, 38 L.Ed.2d 379] (1973); *Head v. New Mexico Board,* 374 U.S. 424 [83 S.Ct. 1759, 10 L.Ed.2d 983] (1963); *Williamson v. Lee Optical Co.,* 348 U.S. 483 [75 S.Ct. 461, 99 L.Ed. 563] (1955); *Barsky v. Board of Regents,* 347 U.S. 442 [74 S.Ct. 650, 98 L.Ed. 829] (1954); *Semler v. Dental Examiners,* 294 U.S. 608 [55 S.Ct. 570, 79 L.Ed. 1086] (1935)."

What seems to be clear from a reading of *Bigelow* and *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973) is that purely commercial speech advertising purely commercial activity carried on within the state prohibiting such advertising is not protected by the First Amendment. In the instant case the advertising sought to be protected by the injunctive process is purely commercial in nature.

Thus it appears that there is no strong likelihood that such Plaintiffs are likely to prevail upon a full trial upon the merits. I would therefore deny the injunction sought.