**COUNTY OF SANTA BARBARA, a political subdivision of the State of California, and The City of Santa Barbara, a municipal corporation of the State of California, Appellants,**

v.

**Walter J. HICKEL, Secretary of the Interior, United States of America, et al., Appellees.**

**Alvin WEINGAND et al., Appellants,**

v.

**Walter J. HICKEL, Secretary of the Interior, William T. Pecora, Director, United States Geological Survey, D. W. Solanas, Regional Supervisor, Oil and Gas Division, United States Geological Survey, Lee A. Dubridge, Science Advisor to the President of the United States, John S. Steinhart, Office of Science and Technology and Executive Secretary to the Special Panel on the Future of the Union Oil Lease, Gulf Oil Company, Mobil Oil Corporation, Texaco, Inc., Union Oil Co., Appellees.**

**Nos. 25413, 25414.**

United States Court of Appeals, Ninth Circuit.

April 21, 1970.

---

\* Judge Carswell was a member of the panel originally deciding this case but did not participate in this decision.

———◆———

A. L. Wirin (argued), Fred Okrand, Los Angeles, Cal., George P. Kading, Stanley T. Tomlinson, Marvin Levine, Santa Barbara, Cal., Bruce A. Bevan, Jr. (argued), Los Angeles, Cal., for appellants.

Edmund Clark (argued), Washington, D.C., Philip K. Verleger (argued), Allyn Kreps (argued), Los Angeles, Cal., O'Melveny & Myers, Theodore Robinson, Lawler, Felix & Hall, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., Ball, Hunt, Hart & Brown, Long Beach, Cal., Musick, Peeler & Garrett, R. W. Curtis, Nossaman, Waters, Scott, Krueger & Riordan; Miles W. Newby, Jr., Los Angeles, Cal., Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, Shiro Kashiwa, Asst. Atty. Gen., Washington, D.C., Wallace E. Sedgwick, of Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., Wm. Mathew Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellees.

Before HAMLEY and BROWNING, Circuit Judges, and SMITH, District Judge.*

HAMLEY, Circuit Judge:

These cases involve oil drilling and production operations in the Santa Barbara Channel. They are before us on appeals taken by the respective plaintiffs from orders, entered in both cases, denying motions for a preliminary injunction.

---

* The Honorable Russell E. Smith, United States District Judge for the District of Montana, sitting by designation.

We consolidated the cases for briefing and argument with County of Santa Barbara, et al. v. Malley, et al., 426 F.2d 171, (9th Cir. 1970) in which a separate opinion is being filed today. For convenience we will refer to the three as the *Santa Barbara, Weingand* and *Malley* cases. The two cases dealt with in this opinion (the *Santa Barbara* and *Weingand* cases) will sometimes be referred to collectively as the *Hickel* cases.

On April 1, 1968, following competitive bidding, the Secretary of the Interior (Secretary) awarded leases to the non-Government appellees authorizing them to explore for oil, and to construct and operate oil production facilities, on the Outer Continental Shelf in the Santa Barbara Channel. This was done pursuant to authority vested in the Secretary under the Outer Continental Shelf Lands Act (Act), 43 U.S.C. § 1331 et seq.

On January 28, 1969, there was an oil well blowout in the Santa Barbara Channel under Platform A, a facility constructed and operated by Union Oil Company under a lease awarded to it in the manner described. On February 7, 1969, the Secretary ordered cessation of all oil drilling and production operations in the Channel. Under direction of the President, the Secretary then appointed a panel of experts, popularly known as the DuBridge Panel, to make recommendations to reduce the then extant oil seepage and to minimize the possibility of future oil spills. On May 27, 1969, the panel issued its recommendations.[1]

In the meantime, on April 4, 1969, plaintiffs in the *Santa Barbara* case filed that action, and on June 4, 1969, they filed an amended complaint. Two claims were asserted. In their first claim plaintiffs alleged that in connection with the awarding of leases, the Secretary had exceeded his statutory authority; and that in the construction and operation of facilities thereunder, some or all of the defendants had been negligent and had engaged in extra-hazardous activities without taking precautions required by such activities. In their second claim plaintiffs asserted that "said Act and the application thereof is [sic] repugnant to the Constitution of the United States * * *," and they requested that the matter be heard before a three-judge court under 28 U.S.C. § 2282.[2]

Accordingly, plaintiffs in the *Santa Barbara* case sought a mandatory injunction which would permanently stop any further offshore drilling operations adjacent to the State of California.

---

1. In summary, the DuBridge Panel recommendations, made public on June 2, 1969, were to:

    1. Contain and control present oil seepage through the use of underwater receptacles or other suitable methods.

    2. Seal off, or reduce as much as possible, the flow from existing seeps through a program of shallow drilling (above the 'C' marker), pumping and grounding.

    3. Review the possible earthquake hazards and take necessary actions.

    4. Attempt, through an oil withdrawal program, to determine the degree of interconnection between levels of the Repetto formation.

    5. Reduce pressures throughout the reservoir to hydrostatic or less and maintain pressures with water injection, if needed, to minimize subsidence.

    6. Deplete all Repetto reservoirs as efficiently and rapidly as possible, consistent with safe practices.

2. Plaintiffs alleged that the Act, on its face or as applied, is unconstitutional under the Fifth Amendment because: (1) the Act provides for an unconstitutional delegation of legislative powers to the executive branch of government; (2) the powers granted the Secretary—under the Act—are unlimited, overbroad, vague and without standards with respect to such matters as the commencement, continuance or termination of drilling; and (3) the Act makes no provision for hearing procedures nor for the right of redress or compensation to persons adversely affected or deprived of private property upon the application and enforcement of the Act. Plaintiffs also alleged that the Act violated their "fundamental right to retain and enjoy the esthetic beauty of natural resources reasonably free of obstruction and pollution * * *," as guaranteed by the Ninth Amendment.

They also sought a judicial declaration that the Act is unconstitutional.

Plaintiffs in the *Weingand* case commenced that action on July 10, 1969, and filed an amended complaint on August 11, 1969. Two claims were asserted. In their first claim, plaintiffs alleged that the Government defendants: (1) had refused to make available to plaintiffs and others the data upon which the recommendations of the DuBridge Panel were based; and (2) had refused to accord plaintiffs a hearing on whether the DuBridge recommendations should be effectuated. In their second claim, plaintiffs challenged the constitutionality of the Act upon essentially the same grounds relied upon by the plaintiffs in *Santa Barbara*.

Plaintiffs in the *Weingand* case sought: (1) the convening of a three-judge court under 28 U.S.C. §§ 2282 and 2284 to hear and determine the proceedings; (2) a preliminary, and a permanent, injunction restraining the Secretary from approving the DuBridge report and from effectuating the Du-Bridge recommendations without first granting plaintiffs and others a public hearing and without giving plaintiffs and others prior access to the DuBridge data; and (3) a preliminary and a permanent injunction restraining the Secretary from the enforcement, operation and execution of the Act on the ground of its repugnance to the Constitution of the United States.

A three-judge court was constituted to hear both the *Santa Barbara* and *Weingand* cases. In both cases plaintiffs moved for summary judgment on the claims challenging the constitutionality of the Act. In both, defendants moved to dismiss the action. The Honorable Albert Lee Stephens, Jr., one of the members of the three-judge court, with the concurrence of all three judges of that court, entered an order providing that only those motions which raise a constitutional question would be heard by the three-judge court, and providing that all other motions not raising a constitutional issue would be heard by Judge Stephens.[3] In the same order the motions for summary judgment were assigned to the three-judge court for disposition.

The three-judge court heard arguments on the motions for summary judgment on September 23, 1969. On February 10, 1970, the three-judge court, in an unreported order, denied the motions for summary judgment, holding that the Act and regulations "are not repugnant to the Constitution of the United States."

On October 3, 1969, the plaintiffs in the *Malley* case commenced their action. On the same day plaintiffs in all three cases filed a joint motion for a preliminary injunction. The nature of the preliminary injunction sought in the *Malley* case is described in our opinion in that appeal. In the *Hickel* cases, plaintiffs seek to restrain the Government defendants, pending disposition of the litigation, from allowing the drilling of any new wells in the Santa Barbara Channel without first: (1) holding a public hearing and (2) making available to plaintiffs and to the public, a reasonable time in advance of the hearing, the data upon which such defendants have acted or intend to act with regard to the Santa Barbara Channel oil spill.[4]

The district court denied the motion for a preliminary injunction in the *Hickel* cases on February 10, 1970. In

---

3. Since the parties do not, on these appeals, question this procedure, we express no opinion as to whether the two suits should have been bifurcated in this manner. Later in this opinion, however, we will have something to say concerning the disposition of the motions for a preliminary injunction by a single district judge rather than by the full three-judge court.

4. By this time the DuBridge recommendations were in the process of implementation. See note 1 above. After such recommendations had been made, the Secretary authorized defendant Union Oil Company to effectuate the recommended priorities. Union began doing so immediately by, among other things, drilling new oil wells.

so ruling, that court held that: (1) there is no requirement of a hearing under the Constitution or laws of the United States, or applicable rules or regulations, for persons in plaintiffs' position; (2) there is no requirement under the Constitution, laws, or regulations that information such as that which plaintiffs seek be made available to them; and (3) plaintiffs have not shown sufficient need for the extraordinary relief which would be afforded by a preliminary injunction and have failed to show an irreparable injury.[5] These appeals followed.

The granting or withholding of a preliminary injunction rests in the sound discretion of the trial court. Jones v. Board of Regents, 397 F.2d 259 (9th Cir.1968). Our function on these appeals is therefore to determine whether, in denying a preliminary injunction, the district court abused its discretion.

A showing that the plaintiffs will otherwise suffer irreparable injury is an essential prerequisite to a preliminary injunction. Kontes Glass Company v. Lab Glass, Inc., 373 F.2d 319, 320 (3rd Cir.1967). Clearly, plaintiffs have not shown that, unless a preliminary injunction is issued granting them a hearing before the Government defendants allow the drilling of new wells in the Santa Barbara Channel, there will be another blowout or other physical damage of an irreparable nature. But they argue that they have a right to an agency hearing before additional oil drilling is allowed, and if they are not granted such a hearing pending disposition of the litigation, the right to such hearing will, as to any well drilled in the meantime, be lost forever. This is the irreparable damage which, plaintiffs assert, should have been, but was not, recognized by the district court.

Thus, while the merits of the litigation are not ordinarily to be decided in passing upon a motion for a preliminary injunction, plaintiffs have here so related their irreparable damage contention to their asserted right to a hearing that a consideration of the merits cannot be avoided.

We turn, then, to plaintiffs' claimed right to an agency hearing before the non-Government defendants are allowed to drill new wells on the Outer Continental Shelf. Plaintiffs do not contend that the Act contains any express language requiring the Secretary of the Interior or any of his representatives to afford plaintiffs a hearing or to make available the desired data. They contend, instead, that they are entitled to such a hearing, and to the data, because the applicable regulations provide for such a hearing, and because the failure to grant a hearing would deprive plaintiffs of due process of law.[6]

The regulations of the Secretary pertaining to oil and gas operations in the

5. The district court also thought that the circumstances were such that the court should not restrict the Secretary's freedom of action in dealing with the urgent problem of oil spillage, finding:

"The Secretary of the Interior may have necessity for making decisions in sequence upon the matter which is the subject of the above entitled action, which would be hampered by preliminary injunctive relief.

"A preliminary injunction granted herein, as requested by plaintiffs, might very well inhibit the decision making which would be necessary for the protection of the public and for prevention of another such incident."

6. Plaintiffs also claim that they are entitled to a hearing as a matter of equal protection of the law under the Act and the regulations promulgated by the Secretary. According to their reasoning, the Act and the regulations "provide ample due process to the oil company lessees but not the plaintiff or the public * * *," because they provide lessees with repeated opportunities for hearings on matters affecting the lessees' interests but make no similar provision for the plaintiffs or for the general public. However, since plaintiffs challenge the actions of a federal official in this suit, this line of argument, although labelled an equal protection attack, amounts to a claim of deprivation of due process. *Cf.* Bolling v. Sharpe, 347 U.S. 497, 74 S. Ct. 693, 98 L.Ed. 884 (1954).

Outer Continental Shelf appear in 30 C. F.R. §§ 250.1 et seq. (Part 250) and 43 C.F.R. §§ 3380.0 et seq. (Part 3380).

Plaintiffs rely upon several sections of Part 250, as noted in the margin.[7] These regulations were amended in August, 1969. 34 Fed.Reg. 13544 (1969). We will distinguish between the revised and the superseded regulations by use of the terms "new" and "old."

Both the old and the new regulations contained in Part 250 spell out in considerable detail the factors which the Secretary and his agents are to bear in mind in performing their duties under the Act. These factors include the protection and conservation of natural resources, maximum economic recovery of mineral resources compatible with sound conservation practices, protection of wildlife and aquatic life, protection of human health, safety, property, and the environment, abatement of damage or waste, and avoidance of pollution of the waters of the high seas. *E. g.*, 30 C.F.R. §§ 250.1 (old and new), 250.11 (old and new), and 250.12 (old and new).

The only provision of the old Part 250 regulations which made any mention of a hearing was section 250.11. This section provided that, "After appropriate hearings," the supervisor (a representative of the Secretary) may establish field rules to govern the development and method of production of a pool, field, or area.

Old section 250.11 did not provide for the kind of hearing plaintiffs seek, for they have not asked to be heard with reference to the establishment of "field rules." Furthermore, new section 250.-11, as revised in August, 1969, which controls this suit (Thorpe v. Housing Authority, 393 U.S. 268, 281–282, 89 S.

Ct. 518, 21 L.Ed.2d 474 (1969)), eliminates even that provision for a hearing. In its place, new section 250.11 provides that, prior to the issuance of orders and rules, the supervisor "may consult with, and receive comments from, lessees, operators, and other interested parties." 34 Fed.Reg. 13544 (1969). Granting that plaintiffs are "interested parties" in the context of these cases, their right under new section 250.11 to make known their views does not now expressly encompass hearings.[8] There is no other provision of the Part 250 regulations which provides for hearings.

With regard to Part 3380, plaintiffs primarily rely upon section 3381.4, as recently revised. 34 Fed.Reg. 13549 (1969). This section pertains to the selection of tracts for leasing on the Outer Continental Shelf. It provides that, prior to the selection of tracts for leasing, the Director (a representative of the Secretary) shall evaluate fully the potential effect of the leasing program "on the total environment, aquatic resources, aesthetics, recreation, and other resources in the entire area during exploration, development and operational phases." *Id.* The section further provides that, to aid him in his evaluation and determinations, the Director "shall request and consider" the views and recommendations of appropriate federal agencies, and "may hold public hearings after appropriate notice, and may consult with State agencies, organizations, industries and individuals." *Id.*

It will be noted that this regulation pertains to the selection of tracts for leasing, and not to the allowing of drilling of new wells at particular locations, which is the limited sphere of activity plaintiffs seek to affect by their motion for a preliminary injunction. Moreover,

---

7. 30 C.F.R. §§ 250.1. .11, .12, .16, .17, .30, .36, .42, .43, .46, .81, and .82.

8. This is not to say that the supervisor, or a higher official in the hierarchy of the Department of the Interior, may not call for a hearing, or that such a hearing ought not to be granted under circumstances of the kind involved in this litiga-

tion. Absent emergency considerations such as suggested in the findings of fact of the district court, it would appear to be a salutary practice for the appropriate officials to adopt a liberal attitude towards the granting of hearings in matters of such public importance as are involved in this case.

the provision of new section 3381.4 with regard to hearings does not speak in mandatory terms but merely authorizes the Director to hold public hearings if he wishes to do so.

■ This leaves for discussion plaintiffs' argument that the failure to grant them a hearing and prior access to the described data deprives them of due process of law. The Act does not expressly grant the right of public hearings, as plaintiffs concede. They are arguing, in effect, that the constitutionality of the Act can only be saved by reading into the statute the requirement that hearings be held.

But all aspects of this constitutional question have heretofore been assigned to the three-judge court in the *Santa Barbara* case and we are therefore without jurisdiction to consider that issue. In their second claim in the *Santa Barbara* case, which was assigned to the three-judge court, plaintiffs alleged that the Act or "the application thereof" is repugnant to the Constitution. One reason stated in this claim why the Act is unconstitutional is that "the Act and the actions of the Secretary of the Interior make no provision for hearing procedures. * * *" For this reason, and others, plaintiffs sought a mandatory injunction permanently restraining defendants from any activities involving offshore oil drilling operations of any nature adjacent to the shore of the State of California.

In their second claim in the *Weingand* case, plaintiffs purport to limit their grievance to the asserted unconstitutionality of the Act "on its face." If plaintiffs thereby intended to deprive the three-judge court of jurisdiction to determine whether the Act, as applied, is unconstitutional, we question whether they may do so. Title 28, section 2282, provides that when an injunction is sought to restrain the "enforcement, operation or execution of any Act of Congress for repugnance to the Constitu-

tion," the application is to be heard and determined by a district court of three judges. The quoted language does not seem to be limited to questions concerning the constitutionality of a federal statute "on its face."

Moreover there would be an obvious waste of judicial resources, and an unnecessary confusion of issues, if plaintiffs were permitted to pursue part of their constitutional attack in the three-judge court, with appeal to the Supreme Court, and part in the single district court, with appeal to this court. Finally, however successful plaintiffs may have been in bifurcating the constitutional issue in the *Weingand* case, they have, as noted above, submitted the whole constitutional problem to the three-judge court in the *Santa Barbara* case.

Inasmuch as the motions for a preliminary injunction in the *Hickel* cases raised constitutional questions, it is doubtful whether the single district judge, as distinguished from the three-judge court, should have dealt with any phase of those motions. See 28 U.S.C. § 2284(3)–(5). But since the single district judge determined to deal with them, and this course has not been questioned by any of the parties, his subject-matter jurisdiction was at least limited to non-Constitutional issues.

■ Since, as to all aspects of the *Hickel* cases which are properly before this court, plaintiffs have failed to establish a right to an agency hearing before additional oil drilling on the Outer Continental Shelf is allowed, the failure to grant such a hearing does not amount to an irreparable damage which could be avoided by granting the requested preliminary injunction. Accordingly, the district court did not abuse its discretion in denying, on the non-Constitutional grounds, the motion for a preliminary injunction.

Affirmed.