Robert F. BARRETT,
Plaintiff-Appellant,

v.

H. G. SMITH et al.,
Defendants-Appellees.

No. 75–1905.

United States Court of Appeals,
Ninth Circuit.

Dec. 12, 1975.

Rehearing and Rehearing En Banc
Denied Feb. 9, 1976.

Certiorari Denied May 19, 1976.
See 96 S.Ct. 2179.

Robert K. Dorsey (argued), Las Vegas, Nev., for plaintiff-appellant.

John P. Fadgen (argued), Las Vegas, Nev., for defendants-appellees.

OPINION

Before BARNES and ELY, Circuit Judges, and PALMIERI,* District Judge.

PER CURIAM.

Plaintiff Barrett was employed as a policeman with the Boulder City, Nevada, Police Department since 1965. On December 30, 1974, he held the rank of Lieutenant. On that date, he was served with a letter by the Chief of Police (defendant H. G. Smith). This letter set forth a series of violations of Police Department rules and regulations, and informed Barrett that he was dismissed from the Boulder City Police Department. The letter was signed by Smith as Chief of Police, and approved by defendant Degernes as City Manager. At the same time Barrett was given a memorandum from Degernes stating that if Barrett wished to appeal the action recommended by the Police Chief and approved by Degernes, he must file his notice of appeal with the Boulder City Civil Service Commission within 10 days. Barrett filed his notice of appeal with the Civil Service Commission on December 31, 1974.

On January 6, 1975, Barrett was notified that his hearing before the Boulder City Civil Service Commission would take place on January 16, 1975. On January 13, 1975, Barrett filed a motion with the Civil Service Commission to set aside the dismissal for failure to comply with Civil Service Rules and Regulations relative to disciplinary actions and procedures. This motion was based on the fact that Barrett had not been afforded a hearing before either the Chief of Police or the City Manager prior to his

* The Honorable Edmund L. Palmieri, Senior District Judge, Southern District of New York, sitting by designation.

dismissal. He sought to have the dismissal set aside and to be reinstated until the City followed the appropriate rules and regulations. The Commission, with defendants Blaine, Orr and Grassmeier as its members, heard arguments on this motion at the January 16 hearing. The Commission refused to set aside the dismissal and continued the matter until January 20, 1975, at the request of counsel for both sides.

On January 20, 1975, Barrett filed an action in the United States District Court for the District of Nevada alleging jurisdiction under 28 U.S.C. Section 1343 (Civil Rights Act) and 42 U.S.C. Sections 1983 (Civil Action for Deprivation of Rights) and 1985 (Conspiracy to Interfere with Civil Rights). In conjunction with his complaint, Barrett moved for a temporary restraining order, and a preliminary injunction. On the filing date, the Court entered a temporary restraining order restraining defendants from proceeding further and assuming jurisdiction to conduct the Civil Service Commission hearing on Barrett's appeal. The motion for a preliminary injunction was set down for hearing on January 29, 1975. Following that hearing, the motion for preliminary injunction was ordered to stand submitted following submission of final briefs. Counsel stipulated that the temporary restraining order would be continued until the decision on the preliminary injunction was rendered.

The District Court on April 7, 1975, entered its Memorandum and Order denying Robert F. Barrett's motion for Preliminary Injunction. Barrett thereupon filed a notice of appeal together with a Motion to Continue Preliminary Restraining Order Pending Determination of Appeal. Smith and Degernes, having no objection to the continuation of the temporary restraining order, filed no Points and Authorities in opposition to said motion and thereafter said temporary restraining order was continued, pending a determination by this Court on appeal.

We keep in mind that the appeal of Barrett is from the denial of the Lower Court's refusal to issue a Preliminary Injunction. The granting or withholding of a Preliminary Injunction rests in the sound discretion of the Trial Court, *Meccano, Ltd. v. John Wanamaker,* 253 U.S. 136, 141, 40 S.Ct. 463, 64 L.Ed. 822 (1920), and among the factors to be considered are whether irreparable harm will result absent such stay and whether there is a likelihood that the moving party will prevail on the merits. *County of Santa Barbara v. Hickel,* 426 F.2d 164, 168 (9th Cir. 1970); *King v. Saddleback Junior College District,* 425 F.2d 426, 427 (9th Cir. 1970), *cert. denied,* 404 U.S. 979, 92 S.Ct. 342, 30 L.Ed.2d 294 (1971). The Lower Court, in denying Barrett's Motion for a Preliminary Injunction, stated on page 13 of its Memorandum and Order that Barrett had not established that there was a likelihood that he would prevail on the merits or that he would suffer irreparable harm absent the granting of injunctive relief, and that therefore he was not entitled to a preliminary injunction. (TR–224).

It is settled that an appeal from an order granting or refusing an injunction (28 U.S.C. § 1292(a)(1)) brings before the appellate court the entire order, not merely the propriety of injunctive relief, and that the appellate court may decide the merits of the case and order dismissal of the action. Orders granting or denying a preliminary injunction are appealable. C. Wright, Law of Federal Courts § 102, at 459 (2d ed. 1970); *See Deckert v. Independence Shares Corp.,* 311 U.S. 282, 287, 61 S.Ct. 229, 85 L.Ed. 189 (1940).

During oral argument (and after it[1]) this Court was urged not to determine the appeal by merely determining the

---

1. We are in receipt of a letter directed to the Clerk of this Court from counsel for plaintiff, which is self-explanatory, reading as follows:

"At the time the within matter was presented to the panel in Los Angeles this date, I was asked whether or not I wished the matter ruled upon the merits or narrowly on the issue of abuse of discretion in failing to grant the Preliminary Injunction requested. It was indicated that if the Court ruled on the merits, this may prejudice a trial for permanent injunction.

"It is my opinion that the record presents substantially all the evidence which would

propriety of the District Court's refusal to issue a Preliminary Injunction. Appellant urged us to consider the merits of his case, and we will do so. Appellant asserts that a *pretermination* hearing is required; that he had none, and hence that he has not had due process. *See Seitz v. Clark*, 524 F.2d 876 (9th Cir. 1975).

be presented at a trial, that no purpose would be served by deciding the matter on an abuse of discretion basis only, and that failure to decide on the merits would merely result in both sides being back before the Court of Appeals on a very similar record. "It is therefore the request of Plaintiff-Appellant Barrett that the appeal be decided on the merits."

2.  Section 28, Article III, of the Boulder City, Nevada Charter provides:

    "Section 28, City Manager: Powers and Duties:

    "The city manager shall be the chief executive officer and the head of the administrative branch of the city government. He shall be responsible to the council for the proper administration of all affairs of the city and to that end, subject to the civil service provisions of this charter, he shall have the power and shall be required to:

    "1. Appoint all officers and employees of the city, and when necessary for the good of the service, remove any officer and employee of the city except as otherwise provided by this charter and except as he may authorize the head of a department or office to appoint and remove subordinates in such department or office."

3.  Section 69, Amendment VII, of the Boulder City, Nevada Charter provides (in material part):

    "Section 69, Commission Rules and Regulations:

    "1. The commission shall prepare and adopt rules and regulations to govern the selection and appointment of all employees of the city within the provisions of this article and such rules and regulations shall be designed to secure the best service for the public.

    \*   \*   \*   \*   \*   \*

    "3. Such rules and regulations may:

    \*   \*   \*   \*   \*   \*

    "(b) Provide for disciplinary, suspension, demotion and dismissal proceedings, and shall further govern promotions and advancements.

    \*   \*   \*   \*   \*   \*

    "5. The Commission shall establish the procedures by which an employee may appeal a disciplinary action to the commission.

Appellant in his Opening Brief quotes at length three portions of the Boulder City Charter: Sec. 28, Art. III *City Manager: Powers and Duties*,[2] Sec. 69, Amendment VII *Commission Rules and Regulations*,[3] Sec. 112, Art. XI *Removal of Officers and Employees*,[4] and one of the Civil Services Rules, Rule XI *Disciplinary Actions and Procedures*.[5]

\*   \*   \*   \*   \*   \*

    "8. All selections of persons for employment or appointment or promotion, in any department of the city within the provisions of this article, shall be made in accordance with such rules and regulations."

4.  Section 112, Article XI, of the Boulder City, Nevada Charter provides:

    "Section 112, Removal of Officers and Employees.

    "Any officer *or employee to whom the city* manager, or a head of any office, department or agency, may appoint a successor, may be removed by the city manager or other appointing officer at any time. Subject to the provision of Article VII of this charter, the decision of the city manager, or other appointing officer, shall be final and there shall be no appeal therefrom to any other office or body."

5.  Rule XI, Disciplinary Actions and Procedures, Amendment III, of August 12, 1965, of the Civil Service Rules and Regulations, provides, in part, as follows:

    "1. *DISCIPLINARY ACTION:* An employee may be disciplined for insubordination, inefficiency, failure to pay just debts, misfeasance, malfeasance, nonfeasance, violations of the regulations of the City, Department or Civil Service Commission, or any action which brings discredit to the service.

    "2. *SUPERVISORY ACTION:* Disciplinary action may be taken at the appropriate supervisory level as deemed necessary to maintain the efficiency of the *supervisor's* responsibility.

    "3. *TYPES OF DISCIPLINE:* The following types of disciplinary action may be administered, in accordance with the provisions of this rule, and copy of all disciplinary actions, except spoken reprimand, shall be furnished promptly to the Commission:

    A.  Spoken Reprimand
    B.  Written Reprimand
    C.  Reduction in one or more pay steps
    D.  Suspension without pay
    E.  Demotion to a lower classification
    F.  Dismissal from the City Service.

    "4. *REVIEW OF DISCIPLINARY ACTION:*

    "A. Any employee may appeal disciplinary action he feels is unwarranted to the

Appellant then flatly states that "the Civil Service Rules and Regulations require hearings *prior* to termination." (Op.Br. 10). No reference whatsoever to any specific language in Rule XI is made by appellant to support his statement. Subdivision 4(A) obviously applies to personnel rated lower than plaintiff therein. Subdivision 4(B) provides for "a written statement of facts and charges and summary of oral reviews" if the "review reaches the City Manager." Here it did. There was a written statement made by the Chief of Police. It contained a statement of facts and charges, as required, and was furnished promptly to the employee and the City Manager by the Department Head, the Chief of Police. There had been up to that time no oral reviews, and hence, no summary thereof could be supplied. The employee had the right to be represented by a person of his choice at any review hearing. Plaintiff was notified of that right on December 30, 1974, and exercised that right on January 6 and 16, 1975.

We then come to § 5 of Rule XI. Rather than granting a hearing *prior* to termination, as appellant asserts, this section reads:

"Within 10 days *after* a . . . dismissal by the City Manager, the employee affected by such action may appeal to the Commission by filing with the Commission a notice of appeal. . . ." (emphasis added)

Appellant next asserts:

". . . that the ultimate discipline of dismissal from the city service could only be administered by the City Manager, that therefore there was no other superior outside of the Civil Service Commission to hear a review, and that therefore pretermination review was

next higher level of supervision for oral review, and in this manner upwards through each level of supervision.

"B. In case a review reaches the City Manager, a written statement of facts, charges, and summary of the oral reviews shall be furnished promptly to the employee and the City Manager by the Department Head.

"C. The employee may be represented by a person of his choice at any review hearing.

not affordable [all as maintained by defendants] is the purest sophistry." (Op.Br. p. 11)

The charter specifically places upon the City Manager "the power," and he is required "to . . . *remove any officer and employee of the city* except as otherwise provided by this charter. . . ." (§ 28, Art. III), subject to the Civil Service Commission Rules and Regulations (§ 69, Amend. VII) outlined *post,* Note 3). Subject to the same Rules and Regulations, "the decision of the city manager . . . shall be final and there shall be no appeal therefrom to any other office or body." (Sec. 112, Art. XI).

Appellant next asserts, "[t]he City Manager might have the power to hire or fire employees or officers directly who are not in the classified service, but not those covered by civil service." No authority for such a statement is cited—except, First: plaintiff's conclusion that "[o]therwise the whole civil service system would be meaningless" (Op.Br. p. 11); and, Second: the procedure adopted by the City Charter "would appear absurd" (Op.Br. p. 12); and Third: it is a "forced construction" (Op.Br. p. 13); and Fourth: that the lower court's ruling "renders such rules and regulations" invalid.

We totally disagree.

We next think it proper to note the trial court's statements as to appellant's position in the lower court:

"It is first important to note that Barrett has never contended that the procedures established by the Boulder City Civil Service Commission in its rules for hearings are inadequate insofar as due process is concerned. Rather, it is his contention that there was a

"5. *CIVIL SERVICE APPEAL:* Within ten (10) days after a reduction in pay, suspension, demotion or dismissal by the City Manager, the employee affected by such action may appeal to the Commission by filing with the Commission a notice of appeal. The notice of appeal shall be signed by the employee, and shall clearly state the name and address of such employee."

failure to comply with these rules and regulations and that such failure amounts to a deprivation of due process. It is claimed that the above rules entitled him to a specification of the charges and a hearing, with counsel, before his supervisor, the Chief of Police. Following that hearing, Barrett claims that he was entitled to the review before the City Manager set forth in Section 4(B) of Rule XI. Following that, he claims that he would then be entitled to the appellate review by the Civil Service Commission. At the hearing on this motion, the Court questioned Barrett's counsel as to whether he felt Barrett was entitled to three hearings, receiving an affirmative response. Thus, it is Barrett's contention that he is entitled to two pre-termination hearings and a review by the Civil Service Commission. This argument is the basis for his motion for a preliminary injunction. Barrett seeks an order restraining his discharge unless he is given notice of the grounds and afforded an opportunity to be heard before his supervisor (the Chief of Police) and the City Manager prior to their making a decision as to his dismissal. In addition he seeks reinstatement to his employment as of December 30, 1974, with back pay and benefits, until he is lawfully terminated after the pre-termination hearings. Finally, Barrett seeks to enjoin the Civil Service Commission from assuming jurisdiction to proceed with a review of the discharge until he receives the pre-termination hearings. It should be noted that Barrett refutes the charges set forth in the dismissal letter and alleges that the reasons for his dismissal stem from long-standing animosity between him and the Chief of Police." (CT, pp. 216–217).

Appellant cites five cases in his opening brief; appellees cite eight (two of these relate to the trial court's discretion in denying the Preliminary Injunction). Appellant cites *O'Brien v. Galloway,* 362 F.Supp. 901 (D.Del.1973), which appellees do not. Appellees cite, among others, *Henley v. United States,* 379 F.Supp. 1044 (M.D.Pa.1974) and *Brubaker v. Board of Educ.,* 502 F.2d 973 (7th Cir. 1974), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975), which appellant does not. Each side cites the following: *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 164 (1974); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Chism v. Price,* 457 F.2d 1037 (9th Cir. 1972).

We are satisfied that the district court has adequately and correctly considered all the controlling law brought before him, and that his conclusion (that appellant here has not established that there is a likelihood that he will prevail on the merits or that he will suffer irreparable harm absent the granting of injunctive relief, and is therefore not entitled to a preliminary injunction) is correct.

We adopt therefore, and approve the reasoning and discussion of the legal issues by the district judge, beginning with the second full paragraph on page seven and continuing to the bottom of page thirteen (CT, pp. 218–224) of his excellent opinion.[6]

---

**6.** "Thus the Court is faced with the issue of whether Barrett was entitled to a pre-termination hearing. For the purpose of this motion only, it can be assumed that Barrett had both a 'liberty interest' and a 'property interest' within the meaning of the due process clause and *Arnett v. Kennedy,* 416 U.S. 134 [94 S.Ct. 1633, 40 L.Ed.2d 164] (1974) (Powell, J., concurring), (White, J., concurring and dissenting), *Perry v. Sindermann,* 408 U.S. 593 [92 S.Ct. 2694, 33 L.Ed.2d 570] (1972), and *Board of Regents of State College v. Roth,* 408 U.S. 564 [92 S.Ct. 2701, 33 L.Ed.2d 548] (1972). But even though it has been determined that due process applies, 'the question remains

what process is due.' *Morrissey v. Brewer,* 408 U.S. 471, 481 [92 S.Ct. 2593, 33 L.Ed.2d 484] (1972). Thus the determination of whether a preliminary injunction should lie will depend upon whether due process requires a pre-termination hearing in a case of this sort.

"Of prime importance here is the recent Supreme Court case of *Arnett v. Kennedy, supra.* *Arnett* was a plurality opinion, but a reading of the individual opinions, and the cases which have interpreted them, clearly indicates that a pre-termination hearing is not in all cases constitutionally essential. Kennedy was a nonprobationary federal Civil Service employee in the Office of Economic Opportunity (OEO).

Pursuant to the Lloyd-La Follette Act, 5 U.S.C. § 7501, Kennedy was dismissed for allegedly having made recklessly false and defamatory statements about other OEO employees. Though he had a right to reply to the charges, Kennedy did not respond, asserting that he had a right to a trial-type pre-termination hearing. His employment was terminated and he was notified of his right to appeal either to the OEO or to the Civil Service Commission. He then filed suit in District Court, and a three-judge panel held that the discharge procedures authorized by the Act and the attendant Civil Service Commission and OEO regulations denied Kennedy due process of law because they failed to provide for a trial-type pre-termination hearing. The District Court ordered that Kennedy be reinstated with back pay, and that he be afforded a pre-termination hearing prior to any future removal. It is noted that this is essentially the same relief which Barrett is seeking here.

"The Supreme Court reversed. The controlling [sic] opinion, written by Mr. Justice Rehnquist with concurrence by the Chief Justice and Mr. Justice Stewart, stated the issue as 'whether these procedures established for the purpose of determining whether there is 'cause' under the Lloyd-La Follette Act for the dismissal of a federal employee comport with procedural due process . . . .' 416 U.S. at 147–48 [94 S.Ct. 1633]. As to the 'property interest,' the plurality opinion stated:

'. . . The Government might, then, under our holdings dealing with Government employees in *Roth, supra,* and *Sindermann, supra,* constitutionally deal with appellee's claims as it proposed to do here.' 416 U.S. at 155 [94 S.Ct. 1633]. (footnote omitted). As to the 'liberty interest' it was held:

'. . . Since the purpose of the hearing in such a case is to provide the person 'an opportunity to clear his name,' a hearing afforded by administrative appeal procedures after the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause.' 416 U.S. at 157 [94 S.Ct. 1633].

In his concurring opinion, Mr. Justice Powell, with whom Mr. Justice Blackmun joined, found that Kennedy's discharge did not contravene the Fifth Amendment guarantee of procedural due process, 416 U.S. at 164 [94 S.Ct. 1633], and stated:

'On balance, I would conclude that a prior evidentiary hearing is not required and that the present statute and regulations comport with due process by providing a reasonable accommodation of the competing interests.' 416 U.S. at 171 [94 S.Ct. 1633]. (footnote omitted).

Thus it appears that a majority of the Supreme Court would not require a pre-termination hearing in a case of this nature. This is consistent with the Ninth Circuit's pre-*Arnett* holding in *Chism v. Price,* 457 F.2d 1037 (9th Cir. 1972). In addition, courts which have examined the *Arnett* opinions have consistently held that a pre-termination hearing is not required in such circumstances. *See Brubaker v. Board of Ed., School Dist. 149, Cook Cty., Ill.,* 502 F.2d 973, 985 (7th Cir. 1974) (the Constitution does not require that a hearing must precede the termination of a teacher or a public employee); *Magri v. Giarrusso,* 379 F.Supp. 353, 359 (E.D.La.1974) (procedural due process does not require that a public employee be afforded a pre-termination hearing); *Henley v. United States,* 379 F.Supp. 1044, 1047 (M.D. Pa.1974) (non-probationary federal employee not entitled to predismissal hearing).

Barrett places great reliance on *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 164 (1975), in support of his argument that he is entitled to a pre-termination hearing. In *Goss,* several public high school students were suspended from school for misconduct for up to 10 days without a hearing. A three-judge District Court held that they were denied due process of law because they were suspended without a hearing prior to suspension or within a reasonable time thereafter. The Supreme Court affirmed. After determining that due process applied, the Court, in Part III of the opinion, was faced with the question of what due process required under the circumstances of the case, stating that 'the interpretation and application of the Due Process Clause are intensely practical matters' and that 'the very nature of due process negates any concept of inflexible procedure universally applicable to every imaginable situation.' [419 U.S. at 578, 95 S.Ct. 729]. The Court then held:

'There need be no delay between the time 'notice' is given and the time of the hearing. In the great majority of cases, the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is. Lower courts which have addressed the question of the *nature* of the procedures required in short suspension cases have reached the same conclusion. [citations omitted]. Since the hearing may occur almost immediately following the misconduct, it follows that as a general rule notice and hearing should precede removal of the student from school. We agree with the District Court, however, that there are recurring situations in which prior notice and hearing cannot be insisted upon. Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school. In such cases, the necessary notice and rudimentary hearing should follow as soon as practicable, as the District Court indicated.' [419 U.S. at 582, 95 S.Ct. 729].

It becomes immediately apparent that the holding in *Goss* is a limited one. Part III,

which is concerned solely with the requirements of the process, deals only with high school students facing suspensions of 10 days or less. There is no mention of pre-termination hearings for employees and nothing to suggest any limitations on the holdings in *Arnett.* On this point, in *Arnett,* the appellee (Kennedy) urged that the District Court's judgment be sustained on the authority of cases such as *Goldberg v. Kelly,* 397 U.S. 254 [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970) (termination of welfare benefits), *Fuentes v. Shevin,* 407 U.S. 67 [92 S.Ct. 1983, 32 L.Ed.2d 556] (1972) (seizure of property under a writ of replevin), *Bell v. Burson,* 402 U.S. 535 [91 S.Ct. 1586, 29 L.Ed.2d 90] (1971) (suspension of driver's license and vehicle registration), and *Sniadach v. Family Financial Corp.,* 395 U.S. 337 [89 S.Ct. 1820, 23 L.Ed.2d 349] (1969) (prejudgment garnishment). The *Arnett* plurality rejected this argument:

'. . . These cases deal with areas of the law dissimilar to one another and dissimilar to the area of governmental employer-employee relationships with which we deal here. The types of 'liberty' and 'property' protected by the Due Process Clause vary widely, and what may be required under that clause in dealing with one set of interests which it protects may not be required in dealing with another set of interests.' 416 U.S. at 155 [94 S.Ct. 1633].

See also *Abeyta v. Town of Toas [Taos],* 499 F.2d 323, 327 (10th Cir. 1974).

Thus it is clear that the limited holding in *Goss* should not be given universal application. It deals only with the interests of high school students in limited circumstances, and should not be extended to the area of employer-employee relationships. As such, it does not support Barrett's contention that he was entitled to a pre-termination hearing.

As noted above, one major thrust of Barrett's complaint is that he was entitled to a pre-termination hearing. Also, he is requesting a preliminary injunction restraining the defendants from proceeding until such a hearing is provided. But the case law makes it clear that it is probable that he is not entitled to such a pre-termination hearing. As such, it does not appear that he will be able to prevail on the merits on this issue. This is an important factor in this Court's determination that a preliminary injunction should not issue.

Barrett does claim that irreparable harm will result if the injunctive relief is not granted. However, Section 6(E) of Rule XI of the Civil Service Rules and Regulations provides that:

'No employee shall be deprived of any salary or wages for the period of time he may be suspended preceding a hearing, or for such time as he may have been reduced, suspended, demoted or dismissed prior to such hearing, unless such disciplinary action shall be sustained.'

Further, Section 6(D)(2) provides that: 'If the charges are found to be untrue, the employee shall be immediately reinstated to his former position without prejudice.' Thus if Barrett prevails, he will not only be rehired but he will also be compensated for whatever pay he may have lost in the interim. As such, it does not appear that any injury he may sustain would be 'irreparable,' as that term is generally understood in an action of this type. *Moore v. Kibbee,* 381 F.Supp. 834, 837 (E.D.N.Y.1974).

Barrett also contends that irreparable harm will result in that he is unable to obtain employment elsewhere because of his age and the nature of the charges made against him. On this point, the plurality opinion in *Arnett* stated:

'. . . Since the purpose of the hearing in such a case is to provide the person "an opportunity to clear his name," a hearing afforded by administrative appeal procedures after the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause.' 416 U.S. at 157 [94 S.Ct. 1633].

However, the appellee Kennedy argued that delays of up to three months in processing administrative appeals meant that the available administrative appeals did not suffice to protect his 'liberty' interest. Kennedy further asserted that, during the pendency of his administrative appeal, 'a discharged employee suffers from both the stigma and the consequent disadvantage in obtaining a comparable job that result from dismissal for cause from Government employment.' 416 U.S. at 158 [94 S.Ct. 1633]. The *Arnett* plurality rejected this argument, holding:

'. . . We assume that some delay attends vindication of an employee's reputation throughout the hearing procedures provided on appeal, and conclude that at least the delays cited here do not entail any separate deprivation of a liberty interest recognized in *Roth.*' 416 U.S. at 158 [94 S.Ct. 1633].

In the case at bar, the maximum delay would be 60 days from the filing of the appeal (Section 6 of Rule XI provides that the hearing must be set within 30 days of the notice of appeal, with provision for a 30 day postponment). [sic] As such, it does not appear that this delay in providing Barrett an opportunity to clear his name would amount to irreparable harm.

CONCLUSION

Findings of fact and conclusion of law have not been separately stated, but are contained in the body of the foregoing. In that Barrett has not established that there is a likelihood that he will prevail on the merits or that he will suffer irreparable harm absent the granting of injunctive relief, it is clear that he is not entitled to a preliminary injunction. Therefore, it is the Order of this Court that Plaintiff Barrett's motion for a preliminary injunction is hereby denied."

We (1) *Affirm* the Order Denying the Motion for Preliminary Injunction, and (2) remand to the District Court of Nevada with instructions to rescind the Temporary Restraining Order issued by it (restraining defendants from proceeding with the hearing ordered by the Boulder City Civil Service Commission); and (3) order that the defendants proceed with the planned hearing.