RAYMOND MOTOR TRANSPORTA-
TION, INC., a Minnesota Corporation,
and Consolidated Freightways Corpora-
tion of Delaware, a Delaware Corpora-
tion, Plaintiffs,

v.

Zel S. RICE et al., Defendants.

No. 75–C–172.

United States District Court,
W. D. Wisconsin.

Aug. 13, 1976.

· DeWitt, McAndrews & Porter, S. C., by John Duncan Varda and Jon P. Axelrod, Madison, Wis., for plaintiffs.

Bronson C. La Follette, Atty. Gen. of Wis., by Albert O. Harriman, Asst. Atty. Gen., Madison, Wis., for defendants.

.Before SPRECHER, Circuit Judge, and DOYLE and WARREN, District Judges.

## PER CURIAM.

This is an action whereby two corporate plaintiffs challenge certain provisions of the Wisconsin Administrative Code which concern size limitations for trailer-train trucks traveling upon interstate highways in the state of Wisconsin. The plaintiff Raymond Motor Transportation, Inc. is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota; the plaintiff Consolidated Freightways Corporation of Delaware is a Delaware corporation with its principal place of business in Menlo Park, California. The named defendants are various officials of the state of Wisconsin including the State Attorney General,

the Secretary of the Department of Transportation, the Chief Traffic Engineer, the commanding officer of the Wisconsin State Patrol, and the chairman and various members of the Wisconsin Highway Commission. Each defendant is sued in his individual and official capacity.

 The case presents a cause of action arising under the provisions of 42 U.S.C. § 1983 because it is alleged that the defendants have acted and are acting under color of state statute, regulation and custom to deprive the plaintiffs of rights and privileges secured by the Constitution and laws of the United States. Jurisdiction thus lies pursuant to 28 U.S.C. § 1343.[1] The action is properly before a three-judge court, convened by the terms of 28 U.S.C. § 2281, because the complaint specifically attacks and seeks interlocutory and permanent injunctive relief against enforcement of a regulation made by a state administrative board or commission acting under state statutes, said administrative regulation being § Hy 30.14(3)(a) of the Wisconsin Administrative Code.

On March 18, 1976 the cause came on for hearing before this three-judge panel. The following memorandum and order serves to resolve the merits of this controversy, and constitutes final findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.[2]

## I.

Each of the named plaintiffs is a commercial interstate motor carrier holding a certificate from the Interstate Commerce Commission. Each is engaged in substantial interstate commerce operations through Wisconsin, and each currently utilizes a variety of types of trailer-truck vehicles, including some currently prohibited by the statutory and administrative policies of the state of Wisconsin because of their length.

Both plaintiffs make rather extensive use of "twin trailer" combinations, articulated vehicles consisting of a truck tractor, a semitrailer, a set of dollies and a second semitrailer; the two freight-carrying vans are each 27 feet in length, for an overall length of 65 feet for the assembled twin-trailer vehicle. Both plaintiffs also make use of more traditional semitrailer vehicles which are not articulated and which are 55 feet in length when assembled. The differences in size as between these two particular types of vehicles are graphically illustrated at Appendix A.

By statute and administrative regulation, the state of Wisconsin limits the length of most trailer-train vehicle combinations to 55 feet. This limitation is attacked in this suit; counsel for the plaintiffs allege that to so limit vehicle length precludes general commercial operation of twin trailer combinations in Wisconsin and, therefore, constitutes a direct or indirect discrimination

1. It would seem apparent that, while both named plaintiffs are corporations, a corporation is a "citizen of the United States or other person" entitled to invoke § 1983. See, e. g., *Philadelphia Newspapers, Inc. v. Borough Council, etc., of the Borough of Swarthmore,* 381 F.Supp. 228 (E.D.Pa.1974), citing at note 2, *Adams v. City of Park Ridge,* 293 F.2d 585 (7th Cir. 1961).

The complaint invokes jurisdiction "pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1343, 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201–02." In view of the finding that jurisdiction exists through 28 U.S.C. § 1343, the Court need not and does not decide whether jurisdiction is either possible or appropriate under the remaining statutory provisions.

2. The issues in this suit have been fully briefed pursuant to a briefing schedule set prior to hearing. All testimony has been presented by depositions and affidavits. On April 7, 1976

Judge Doyle sent a letter to all counsel to indicate that the members of the three-judge panel had discovered an apparent error in the notice of the March 18 hearing. While the Court had presumed that the hearing presented the case for final adjudication, the notice, dated March 12, 1976, indicated that the hearing was to concern only plaintiffs' motion for a preliminary injunction. Counsel for each party have responded, and indicate that final determination on the merits is indeed appropriate at this time. The Court therefore orders that trial of this action on the merits is hereby consolidated with the hearing on the motion for preliminary injunctive relief, as permitted by Rule 65(a)(2) of the Federal Rules of Civil Procedure. In view of the acquiescence of counsel, there is no impropriety in this procedure. *See generally:* 11 Wright & Miller, Federal Practice and Procedure: Civil § 2950 (1973 ed.).

against interstate commerce and an unlawful burden on interstate commerce in violation of Art. I Sec. 8 of the United States Constitution, as well as a breach of equal protection of the law as guaranteed by the fourteenth amendment to the United States Constitution. For any one or all of these three reasons, it is urged that we issue a declaratory judgment that the vehicle length limitations in effect in Wisconsin are void, and enter a permanent injunction to restrain further prohibition of twin trailer operation on the interstate highways which traverse the state. For the reasons to follow, we decline to take such action.

## II.

Initially, the Court would briefly review the rather complex statutory and administrative scheme by which twin trailer vehicles are now generally prohibited.

Chapter 348 of the Wisconsin Statutes governs the size, weight and load of private and commercial vehicles traveling on all highways in Wisconsin. Section 348.07 provides, *inter alia,* that the over-all length of any single vehicle may not exceed 35 feet and that the over-all length of any combination of two vehicles shall not exceed 55 feet. These limitations are subject to certain exceptions set out in the statute itself, as well as other exceptions to be granted by permit.[3] Section 348.08 concerns vehicle trains, and provides that except by permit no vehicle shall draw more than one other vehicle where the over-all length of the combination exceeds 55 feet.[4]

Permits for vehicles and loads of excessive size or weight may be granted pursuant to section 348.25 of the Wisconsin Statutes; subparagraph (3) of that section grants power to the Wisconsin Highway Commission to prescribe forms for such permits as are allowed by law, and to impose reasonable conditions upon and to adopt reasonable rules for the issuance of permits and the operations of permittees thereunder.[5] Sections 348.26 and 348.27 denominate the types of permits that may become available and include, *inter alia,* annual permits for trailer-train combinations not greater than 100 feet in length. *See:* § 348.27(6) Wis.Stats.[6]

3. Section 348.07 of the Wisconsin Statutes reads in pertinent part as follows:

"*348.07 Length of vehicles*

"(1) No person, without a permit therefor, shall operate on a highway any single vehicle with an over-all length in excess of 35 feet or any combination of 2 vehicles with an over-all length in excess of 55 feet, except as otherwise provided in subs. (2) and (2a).

"(2) The following vehicles may be operated without a permit for excessive length if the over-all length does not exceed the indicated limitations:" [Certain exceptions follow for passenger busses, trolley busses, mobile homes, implements of husbandry temporarily operated on a highway and tour trains. No limitation to vehicles of Wisconsin origin or of Wisconsin residents is set out.]

4. Section 348.08 of the Wisconsin Statutes reads in pertinent part as follows:

"*348.08 Vehicle trains*

"(1) No person, without a permit therefor shall operate on a highway any motor vehicle drawing or having attached thereto more than one vehicle, except that:

"(a) Two vehicles may, without such permit, be drawn or attached when such vehicles are being transported by the drive-away method in saddle-mount combination and the over-all length of such combination of vehicles does not exceed 55 feet;" [Other excep-

tions for implements of husbandry and tour trains follow. Again, no limitation to vehicles from the state of Wisconsin is set out.]

5. Section 348.25(3) of the Wisconsin Statutes reads in full as follows:

"(3) The highway commission shall prescribe forms for applications for all single trip permits the granting of which is authorized by s. 348.26 and for those annual or multiple trip permits the granting of which is authorized by s. 348.27(2) and (4) to (7m). The commission may impose such reasonable conditions prerequisite to the granting of any permit authorized by s. 348.26 or 348.27 and adopt such reasonable rules for the operation of a permittee thereunder as it deems necessary for the safety of travel and protection of highways. Local officials granting permits may impose such additional reasonable conditions as they deem necessary in view of local conditions."

6. Section 348.27(6) of the Wisconsin Statutes reads in full as follows:

"(6) *Trailer train permits.* Annual permits for the operation of trains consisting of truck tractors, tractors, trailers, semitrailers or wagons which do not exceed a total length of 100 feet may be issued by the highway commission for use of the state trunk highways and by the officer in charge of maintenance

Pursuant to and in accordance with the authority embodied in section 348.25 the Wisconsin Highway Commission has enacted chapter Hy 30 of the Wisconsin Administrative Code. This chapter establishes limits, procedures and conditions under which the various permits authorized by sections 348.26 and 348.27 may be issued. Trailer-train permits are governed by section Hy 30.14; general limitations on the issuance of trailer-train permits are described at paragraph (3), and include the restrictions that are challenged in this action:

"Hy 30.14 Trailer-train permits.

\* \* \* \* \* \*

"(3) General limitations on the issuance of trailer-train permits.

\* \* \* \* \* \*

"(a) Trailer-train permits shall be issued only for the operation of vehicles used for the transporting of municipal refuse or waste, or for the interstate or intra-state operation without load of vehicles in transit from manufacturer or dealer to purchaser or dealer, or for the purpose of repair."

Thus, while § 348.27(6) Wis.Stats. contemplates annual permits for trailer-train vehicles not to exceed 100 feet, the Wisconsin Highway Commission has precluded issuance thereof in all but a limited class of cases by virtue of promulgation of § Hy 30.14(3)(a), Wis.Admin.Code.[7] It seems apparent that this administrative prohibition falls within the discretionary rulemaking power granted by § 348.25(3); the Court

must nonetheless determine whether, by adopting this position, the highway commission or any defendant has acted in derogation of either the commerce clause in Art. I Sec. 8, or the equal protection clause of the fourteenth amendment to the United States Constitution.

### III.

■ It is clear that a state statute or ordinance which discriminates against interstate commerce is an impermissible affront to the commerce clause in Art. I Sec. 8 of the United States Constitution. The discrimination thereby prohibited may be either express or implicit. While the face of a state regulation may speak in a neutral fashion, apparently applicable to interstate and intrastate commerce alike, the regulation is nonetheless unconstitutional where its practical effect is to discriminate against interstate commercial activities:

"The commerce clause forbids discrimination, whether forthright or ingenious. In each case it is our duty to determine whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce."

*Best & Co. v. Maxwell*, 311 U.S. 454, 455–456, 61 S.Ct. 334, 335, 85 L.Ed. 275 (1940).

" . . . a statute may, upon its face, apply equally to the people of all the states, and yet be a regulation of interstate commerce which a state may not

---

of the highway to be used in the case of other highways. No trailer train permit issued by the local officials for use of highways outside the corporate limits of a city or village is valid until approved by the highway commission. Every permit issued pursuant to this subsection shall designate the route to be used by the permittee."

Other statutory provisions would allow other types of permits to issue including, *inter alia*, single trip permits for oversize or overweight vehicles or loads, trailer trains or mobile homes (§ 348.26 Wis.Stats.), as well as annual or multiple trip permits on a general basis, for industrial interplant operation, for pole, pipe and vehicle transportation, for mobile homes, for metal scrap, for emergency conservation of energy in transport of fuel or milk commodities,

and for poles and wood pulp (§ 348.27 Wis. Stats.). The record appears to disclose that the plaintiffs have argued that the permits they seek are permissible under § 348.27(6).

7. Attached to the complaint as exhibit B are letters of application for twin trailer permits on interstate highways in Wisconsin, as filed with the Chief Traffic Engineer of the State of Wisconsin on behalf of Raymond Motor Transportation, Inc. and Consolidated Freightways Corporation of Delaware. Each seeks a permit through § 348.27(6) Wis.Stats. and § Hy 30.14 Wis.Admin.Code. Exhibit C to the complaint is a letter from the Chief Traffic Engineer dated April 17, 1975 whereby said applications were denied for failure to comply with § Hy 30.-14(3)(a) Wis.Admin.Code.

establish. A burden imposed by a state upon interstate commerce is not to be sustained simply because the statute imposing it applies alike to the people of all states, including the people of the state enacting such statute."

*Minnesota v. Barber,* 136 U.S. 313, 326, 10 S.Ct. 862, 866, 34 L.Ed. 455 (1890).

In point of fact, it is relatively rare that a state "artlessly discloses an avowed purpose to discriminate against interstate goods." *Dean Milk Co. v. City of Madison,* 340 U.S. 349, 354, 71 S.Ct. 295, 298, 95 L.Ed. 329 (1951). The actual impact of the state policy upon interstate commerce is the critical consideration. *See: Baldwin v. G.A.F. Seelig, Inc.,* 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935); and *Washington State Apple Advertising Commission v. Holshouser,* 408 F.Supp. 857 (3-Judge Ct., E.D.N.C. 1976).

After thorough review of the position of each party the Court concludes that there is neither explicit nor implicit discrimination against interstate commerce through the statutory and administrative scheme in question here. No statute or regulation now at issue expressly focuses its impact upon interstate trucking operations.[8] In practical effect, it seems apparent that the highways of the state of Wisconsin are controlled without regard to the interstate or intrastate nature of the commerce.[9]

The record in this action does not reveal that by means of these facially neutral proscriptions the state of Wisconsin intentionally seeks to isolate local industry or agriculture from foreign competition. *Compare: Minnesota v. Barber, supra; Dean Milk Co. v. Madison, supra; Washington State Apple Ad. Comm'n v. Holshouser, supra.* For all of the foregoing reasons the

---

**8.** The Court would note, for example, that the very administrative regulation under attack in this suit, § Hy 30.14(3)(a) Wis.Admin.Code, expressly states that permits for trailer-trains are to be issued for transport of municipal waste "or for the interstate or intra-state operation" of certain vehicles. The regulation is explicitly nondiscriminatory.

**9.** To support their claims that the state of Wisconsin does discriminate against interstate commerce, counsel for the plaintiffs point to language in a statutory authorization for permits for oversize vehicles used for interplant industrial operations. This statute, § 348.27(4) reads in full as follows (with emphasis added at the questioned provisions):

"(4) *Industrial interplant permits.* The highway commission may issue, *to industries and to their agent motor carriers owning and operating oversize vehicles in connection with interplant, and from plant to state line, operations in this state,* annual permits for the operation of such vehicles over designated routes, provided that such permit shall not be issued under this section to agent motor carriers or from plant to state line for vehicles or loads of width exceeding 96 inches upon routes of the national system of interstate and defense highways. If the routes desired to be used by the applicant involve city or village streets or county or town highways, the application shall be accompanied by a written statement of route approval by the officer in charge of maintenance of the highway in question. A separate permit is required for each oversize vehicle to be operated."

The Court finds this statute to lack the significance that plaintiffs' counsel would urge. Exhibit 5 to the deposition of one Robert R. Weaver is an interdepartmental report from Mr. Weaver, Permit Supervisor for the Wisconsin Department of Transportation, to G. T. Lardsness, Chief Maintenance Engineer. The report is a general review of policies regarding issuance of permits for movement of oversize and overweight loads on public highways. The first page of the report expressly indicates that pursuant to Chapter 30 of the Wisconsin Administrative Code, "[p]ermits are issued on the basis of policies established by the statutes and by the [Wisconsin Highway] Commission *without regard to whether the applicant is a resident of Wisconsin or not.*" (emphasis added).

Counsel for the plaintiffs make much of an incident where the Godfrey Conveyor Company, Inc., an Indiana resident, was denied a permit for overlength interplant transport of loads of boats. *See:* Deposition of Robert R. Weaver at pp. 8 *et seq.* The Court declines to construe this permit refusal as any indication of a state policy against interstate commerce, however, because the Godfrey letter of application failed to disclose that the applicant was an industrial manufacturer as required by § 348.-25(4). *See* Deposition of Wayne Volk, Chief Traffic Engineer, at pp. 45 *et seq.* The applicant thus failed to meet qualifications applicable to every would-be permittee.

In sum, the Court is convinced that all statutory and administrative overweight and overlength permit provisions are worded and applied in an evenhanded fashion.

Court concludes that no impermissible discrimination against interstate commerce is established by the facts of the instant case.

## IV.

Having found no explicit or implicit discrimination, the Court must next consider whether the burden imposed upon interstate commerce outweighs the benefits to the local populous. As stated in a relatively recent decision of the United States Supreme Court:

"Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Huron Cement Co. v. Detroit*, 362 U.S. 440, 443 [80 S.Ct. 813, 4 L.Ed.2d 852]. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."

*Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

■ This Court begins by recognizing that, absent national legislation precluding differing state policies concerning a particular aspect of interstate commerce, a state "may rightly prescribe uniform regulations adapted to promote safety upon its highways and the conservation of their use, applicable alike to vehicles moving in interstate commerce and those of its own citizens." *Sproles v. Binford,* 286 U.S. 374, 390, 52 S.Ct. 581, 585, 76 L.Ed. 1167 (1932), *quoting Morris v. Duby,* 274 U.S. 135, 143, 47 S.Ct. 548, 71 L.Ed. 966 (1927).

"Where traffic control and use of highways are involved and where there is no conflicting federal regulation, great leeway is allowed local authorities, even though the local regulation materially interferes with interstate commerce."

*Railway Express Agency, Inc. v. New York,* 336 U.S. 106, 111, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949), *citing S. C. Hwy. Dept. v. Barnwell Bros.,* 303 U.S. 177, 187, 58 S.Ct. 510, 82 L.Ed. 734 *et seq.* (1938), and *Maurer v. Hamilton,* 309 U.S. 598, 60 S.Ct. 726, 84 L.Ed. 969 (1940).

The United States Supreme Court has also noted that "there are few subjects of state regulation affecting interstate commerce which are so peculiarly of local concern as is the use of the state's highways." *Southern Pacific Co. v. Arizona,* 325 U.S. 761, 783, 65 S.Ct. 1515, 1527, 89 L.Ed. 1915 (1945). That case also held that, as to matters of highway control, "the state has exceptional scope for the exercise of its regulatory power . . . ." Id. at p. 783, 65 S.Ct. at p. 1527. *See too, Bibb v. Navajo Freight Lines,* 359 U.S. 520, 523, 79 S.Ct. 962, 964, 3 L.Ed.2d 1003 (1959). ["The power of the State to regulate the use of its highways is broad and pervasive."]

■ If related to the subject of highway safety, state statutes and regulations carry "a strong presumption of validity" when subjected to judicial review. *Bibb v. Navajo Freight Lines, supra,* 359 U.S. at p. 524, 79 S.Ct. 962. In the field of safety, evidence must be adduced by those challenging any highway regulation to overcome the presumption of validity to which the law is entitled. *Southern Pacific Co. v. Arizona, supra,* 325 U.S. at p. 796, 65 S.Ct. 1515 (Douglas, J., dissenting).

■ The Court concludes that the analysis here must begin with a two-tiered approach: we must first consider whether the questioned regulation was within the province of the state legislature and agency then, secondly, whether the means of regulation chosen are reasonably adapted to the ends sought. *See: S. C. Hwy. Dept. v. Barnwell Bros.,* 303 U.S. 177, 190, 58 S.Ct. 510 (1938). In so doing, the Court does not reconsider policy decisions and possible less intrusive state alternatives, as these are matters for the state legislature.[10] *See: S.*

---

**10.** There appears to be some difference of opinion concerning the question of whether, in the context of this case, this Court can consider if less intrusive alternatives are available to the

*C. Hwy. Dept. v. Barnwell Bros., supra,* 303 U.S. at p. 190, 58 S.Ct. 510; *Bibb v. Navajo Freight Lines, supra,* 359 U.S. at 524, 79 S.Ct. 962.

The following conclusions can be derived from application of the foregoing legal standards to the facts of this case:

■ First, it seems clear that the legislature and highway commission of the state of Wisconsin are within their province as concerns the prohibitions about which the plaintiffs complain. The United States Supreme Court has specifically held that "a state may impose nondiscriminatory restrictions with respect to the character of motor vehicles moving in interstate commerce as a safety measure and as a means of securing the economical use of its highways." *S. C. Hwy. Dept. v. Barnwell Bros., supra,* 303 U.S. at p. 190, 58 S.Ct. [510] at p. 517. The plaintiffs have cited and the Court has found no federal legislation especially covering this aspect of interstate commerce, and the state is therefore entitled to prescribe uniform highway regulations such as those now in question. *Sproles v. Binford, supra,* 286 U.S. at p. 390, 52 S.Ct. 581.

■ Secondly, the Court cannot find that the evidence in the voluminous briefs, depositions and affidavits adduced by or on behalf of the plaintiffs has met the plaintiffs' burden of dispelling the presumption of validity which attaches to these regulations. Simply stated, § Hy 30.14(3)(a) and its companion statutes and regulations have not been shown to be adapted to no permissible safety goal.

As a prime example of the safety considerations at issue here, the Court might focus on the problem of visual impairment posed by the longer twin-trailer combina-

tion trucks. It is undisputed that, if the difference in speed between the two vehicles is 10 miles per hour, it would require approximately two-thirds of a second longer for a faster vehicle to pass the added 10 feet of a twin-trailer combination. *See:* Deposition of Fred J. Myers at pp. 18–19. This period of time would be increased, perhaps dramatically so, if the passing vehicle was traveling at less than the maximum speed permissible and/or if the vehicle being passed was traveling in excess of the applicable maximum speed. It cannot be disputed that drivers of passing vehicles are subjected to additional visual impairment as a result of the greater length of twin-trailer combinations and the time required to pass them; such additional visual impairment might be extreme under adverse weather or traffic conditions.

This Court cannot conclude that prevention of added visual impairment or other similar safety considerations were not within the collective mind of the legislature and administrative bodies responsible for these regulations. Because such factors are indeed legitimate safety concerns, the Court must determine that the proscriptions in question do serve to implement various safety goals.

Under the analysis prescribed by earlier decisions of the United States Supreme Court, this Court would sustain the legislation in question upon the foregoing findings that those promulgating the statutes and regulations were acting within their province and have attempted to implement legitimate safety goals. *See: S. C. Hwy. Dept. v. Barnwell Bros., supra.* More recent Supreme Court authority, however, indicates that further considerations are necessary. Rather than defer to the state

---

state legislature. The quotation from *Pike v. Bruce Church, Inc.* which begins this portion of the opinion seems to indicate that less intrusive alternatives must generally be taken into account with regard to commerce clause questions. *See:* 397 U.S. at p. 142, 90 S.Ct. 844. *See also: Dean Milk Co. v. Madison, supra,* 340 U.S. at p. 354, 71 S.Ct. 295. However, the cases cited in the text of the opinion at this footnote clearly state that the presence or absence of less intrusive alternatives is immaterial in a suit of this nature. Because neither *Pike v. Bruce Church, Inc.* nor *Dean Milk Co. v. Madison* directly concern highway safety regulations, this Court will rely on those cases that do, and ignore possible less intrusive state alternatives to goals which the questioned regulations are designed to implement. As a practical matter, no less intrusive alternative to length limitations on commercial vehicles seems possible.

upon a finding of a rational basis for its conduct, we must inquire whether the burden the state has imposed upon interstate commerce "is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc., supra,* 397 U.S. at p. 142, 90 S.Ct. at p. 847. More specifically, this Court must consider whether upon the whole record " 'the total effect of the law as a safety measure in reducing accidents and casualties is so slight or problematical as not to outweigh the national interest in keeping interstate commerce free from interferences which seriously impede it . . . .' " *Bibb v. Navajo Freight Lines, supra,* 359 U.S. at p. 524, 79 S.Ct. at p. 965 *quoting Southern Pacific Co. v. Arizona, supra,* 325 U.S. at pp. 775–776, 65 S.Ct. 1515. The questioned regulations must be upheld unless this is so.

After thorough review of the position of each party and the voluminous record in this proceeding, the Court must and does find that the total effects of the restrictions imposed by § Hy. 30.14(3)(a) are neither slight nor problematical as concerns highway safety. The burdens thereby imposed upon interstate commerce are not unconstitutional in scope or degree.

The United States Supreme Court has on several occasions equated limitation on vehicle size to public safety. The opinions in these cases contain language which is quite broad; they demonstrate that for purposes of judicial review of state highway legislation, size restrictions might be deemed inherently tied to public safety:

" 'With the increase in number and size of the vehicles used upon a highway, both the danger and the wear and tear grow. To exclude unnecessary vehicles—particularly the large ones commonly used by carriers for hire—promotes both safety and economy. State regulation of that character is valid even as applied to interstate commerce, in the absence of legislation by Congress which deals specifically with the subject.' "

*Morris v. Duby,* 274 U.S. 135, 144, 47 S.Ct. 548, 550, 71 L.Ed. 966 (1927), *quoting*

*Buck v. Kuykendall,* 267 U.S. 307, 45 S.Ct. 324, 69 L.Ed. 623 (1925).

"In the instant case, there is no discrimination against interstate commerce and the regulations adopted by the State, assuming them to be otherwise valid, fall within the established principle that in matters admitting of diversity of treatment, according to the special requirements of local conditions, the states may act within their respective jurisdictions until Congress sees fit to act. *Minnesota Rate Cases,* 230 U.S. 352, 399, 400 [33 S.Ct. 729, 57 L.Ed. 1511].

"We do not find the provision of section 3(c), fixing approximately the same limit of length for individual motor vehicles and for a combination of such vehicles, to be open to objection. If the state saw fit in this way to discourage the use of such trains or combinations on its highways, we know of no constitutional reason why it should not do so."

*Sproles v. Binford,* 286 U.S. 374, 390 and 392, 52 S.Ct. 581, 585 and 586, 76 L.Ed. 1167 (1932)

Counsel for the plaintiffs place much reliance upon the decision in *Bibb v. Navajo Freight Lines,* 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959). Certainly they should do so as the Supreme Court there found an Illinois statute requiring use of a novel type of mudflap on semitrailers to pose an unconstitutional burden on interstate commerce.

This Court finds the *Bibb* case to be factually distinguishable from the circumstances in the case at bar. *Bibb* presented a situation where Illinois was but one state pioneering a new safety device, out of line with the laws of other states in the union, and directly contrary to the laws of the state of Arkansas. The evidence presented at trial actually demonstrated that the new mudflaps possessed no advantages over those in general use; the evidence further showed that adverse effects resulted from these mudflaps such that certain dangers to the public were increased.

In the instant case, the restrictions Wisconsin has imposed upon twin trailer combi-

nations are also in effect in at least 12 other of these United States and the District of Columbia. The trucking equipment required by Wisconsin law is not incompatible with nor in violation of the laws of any other state. That compliance with Wisconsin regulations imposes added costs upon the plaintiffs is a fact of no material consequence. *Bibb, supra,* 359 U.S. at p. 526, 79 S.Ct. 962.

The Court is of the opinion that, perhaps except under circumstances more compelling than those of the case at bar, the state of Wisconsin is entitled to choose the maximum length of the commercial vehicles using its highways without judicial re-evaluation of that choice. The record reveals that 75-foot twin trailers are in use in several other states. *See, e. g.,* the affidavit of F. J. Wickham (Wyoming), and the affidavit of Ray Lower (Idaho). If the plaintiffs are correct in their assertion that there is little or no significant difference between 55-foot and 65-foot trucks, they might argue that there is no significant difference between 65-foot and 75-foot trucks. Would this Court then be required to command use of 75-foot trucks on the highways of Wisconsin? Such are the problems inherent in judicial efforts to second-guess state highway regulations of this nature.

Certainly the question of whether twin trailer trucks are to be permitted upon state highways is a matter "admitting of diversity of treatment, according to the special requirements of local conditions." The restrictions at issue here must thus be upheld. *See: Sproles v. Binford, supra.*

### V.

The Court next moves to the plaintiffs' claims that § Hy 30.14(3)(a) and its companion statutes and regulations serve to deny them equal protection of the law as guaranteed by the fourteenth amendment to the United States Constitution.

With respect to the equal protection argument, it appears that a state's safety regulations are entitled to the same presumption of validity discussed in the foregoing section of this opinion relative to the commerce clause:

"[W]e are dealing here with state legislation in the field of safety where the propriety of local regulation has long been recognized. See *Atlantic Coast Line R. Co. v. Georgia,* 234 U.S. 280, 291 [34 S.Ct. 829, 58 L.Ed. 1312] and cases collected in *California v. Thompson,* 313 U.S. 109, 113–114 [61 S.Ct. 930, 85 L.Ed. 1219]. Whether the question arises under the Commerce Clause or the Fourteenth Amendment, I think the legislation is entitled to a presumption of validity." *Southern Pacific Co. v. Arizona,* 325 U.S. 761, 796, 65 S.Ct. 1515, 1533, 89 L.Ed. 1915 (1945), Douglas, J., dissenting.

Furthermore, when state highway regulations are in question, resolution of a problem of equal protection is to be accomplished by means of practical considerations. That all or some similar evils are not governed by the state is a matter of little consequence. In upholding a New York City traffic regulation concerning advertising on commercial vehicles, Justice Douglas noted the general deference to which such safety restrictions are entitled:

"We cannot say that that [legislative] judgment is not an allowable one. Yet if it is, the classification has relation to the purpose for which it is made and does not contain the kind of discrimination against which the Equal Protection Clause affords protection. It is by such practical considerations based on experience rather than by theoretical inconsistencies that the question of equal protection is to be answered. *Patsone v. Pennsylvania,* 232 U.S. 138, 144 [34 S.Ct. 281, 58 L.Ed. 539]; *Marcus Brown Co. v. Feldman,* 256 U.S. 170, 198–199 [41 S.Ct. 465, 65 L.Ed. 877]; *Metropolitan Co. v. Brownell,* 294 U.S. 580, 585–586 [55 S.Ct. 538, 79 L.Ed. 1070]. And the fact that New York City sees fit to eliminate from traffic this kind of distraction but does not touch what may be even greater ones in a different category, such as the vivid displays on Times Square, is immaterial. It is no requirement of equal protection that all evils of

the same genus be eradicated or none at all. *Central Lumber Co. v. South Dakota,* 226 U.S. 157, 160 [33 S.Ct. 66, 57 L.Ed. 164]."

*Railway Express Agency, Inc. v. New York,* 336 U.S. 106, 110, 69 S.Ct. 463, 466, 93 L.Ed. 533 (1949).

In the case at bar, counsel for the plaintiffs have prepared voluminous sets of data to document the scope of the discrimination which they feel is engendered by the Wisconsin limitation on twin trailer combination trucks. Essentially, they argue that the distinctions created between local and foreign industry and between 55-foot and 65-foot trucks are each without sufficient rationale.

■ Plaintiffs' counsel first argue that the state of Wisconsin has infringed upon a fundamental right of interstate travel such that only a compelling state interest will justify the distinctions at issue. The Court disagrees.

It appears that all of the authorities cited in support of the assertion that commercial vehicles are entitled to a fundamental right of interstate travel are cases concerning civil liberties of private citizens. *See, e. g., Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The Court declines to adopt those opinions in the context of the economic regulations here in question. Unless no rational basis can be found to support the legislative discrimination, the statutes and regulations are to be upheld. *See: Railway Express v. New York, supra; Sproles v. Binford, supra,* 286 U.S. at p. 391 *et seq.,* 52 S.Ct. 581.

■ The question of whether there is no rational basis for the distinctions created by the face and implementation of § Hy 30.-14(3)(a) merits little discussion beyond that of the foregoing portions of this opinion. Essentially, the Court finds that differences in treatment between local and foreign trucking operations are slight, if existent at all. *See:* part III, *supra.* The distinctions

between 55-foot and 65-foot tractor-trailer combinations are supported by adequate safety considerations, as discussed with respect to the problem of the burden on interstate commerce, part IV *supra.*[11]

When judged by practical rather than technical considerations, the Court must conclude that the differences in treatment about which the plaintiffs complain are not in violation of the equal protection clause of the fourteenth amendment to the United States Constitution.

## VI.

After due consideration of the position of each party, as disclosed by the pleadings, briefs and other documents that comprise the written record in this case to date and as supplemented by the oral argument heard, and for the reasons set out in the foregoing memorandum opinion;

THE COURT ORDERS that, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, the trial on the merits of this case is hereby consolidated with the hearing of March 18, 1976, noticed as a hearing on the plaintiffs' motion for preliminary injunctive relief;

THE COURT FINDS that the administrative regulation at issue here, § Hy 30.-14(3)(a) Wis.Admin.Code, constitutes neither an impermissible discrimination against interstate commerce nor an undue burden upon interstate commerce, all such that no violation of the commerce clause of Art. I Sec. 8 of the United States Constitution is perceived;

THE COURT FURTHER FINDS that, both on its face and as applied, § Hy 30.-14(3)(a) Wis.Admin.Code creates no distinction without a rational basis such that no violation of the equal protection clause of the fourteenth amendment to the United States Constitution is demonstrated;

THE COURT THEREFORE ORDERS that the requests for preliminary and per-

11. *Compare: Sproles v. Binford,* as quoted in text *supra*: where a state chooses to regulate length limits for individual and combinations of motor vehicles there appears to be "no constitutional reason why it should not do so."

manent injunctive relief and for declaratory judgment, as filed on behalf of the plaintiffs, must be and are hereby DENIED.

This case is DISMISSED without taxation of costs and attorneys' fees to any party.

APPENDIX A